Frederick T. **HARRIGAN**, Individually and on behalf of all others similarly situated

v.

**UNITED STATES** of America.

Civ. A. No. 72–1535.

United States District Court, E. D. Pennsylvania.

June 14, 1974.

---

Jerome H. Ellis, Philadelphia, Pa., for plaintiff.

Neil R. Peterson, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

This Federal Tort Claims action, filed on August 3, 1972, is before the Court on the motion of the defendant, the United States of America, to reconsider this Court's order of August 10, 1973, insofar as it pertains to the class action status of the litigation. On the latter date the Court, *inter alia,* denied, pending further discovery, the motion of the United States to dismiss the class action allegations of plaintiff's complaint. The Court has now thoroughly reviewed the grounds for reconsideration of its order of August 10, 1973 and hereby dismisses the class action aspects of this suit.

The named plaintiff in this suit, Frederick T. Harrigan, became paralyzed in 1966 and was subsequently hospitalized in the Veterans Administration Hospital, in Philadelphia, Pennsylvania. There, Harrigan alleges, he was negligently induced by misleading statements made to him by employees of the Veterans Administration to submit to surgery of the urinary tract in 1968. Harrigan alleges that he would not have consented to the surgery had he been fully and correctly advised of the nature of the operation and the consequences thereof. As a result of negligent medical treatment, including surgery, plaintiff claims that he has sustained both physical and emotional injury.[1]

Harrigan seeks to bring this suit as the representative of a class of all paralyzed veterans who have agreed to and have undergone similar urological surgery on the basis of similarly misleading information and have sustained injuries as a result of such surgery performed in Veterans Administration Hospitals. Plaintiff seeks to bring and maintain this class action pursuant to Rules 23(a), 23(b)(1)(A), and 23(b)(3) of the Federal Rules of Civil Procedure. In doing so, plaintiff alleges questions of law or fact common to the class as follows:

(A) Whether the Veterans Administration obtained the informed consent of

---

1. On November 30, 1972, subsequent to filing the instant complaint, plaintiff filed an administrative claim with the Veterans Administration pursuant to the Federal Tort Claims Act. 28 U.S.C. § 2675(a). Plaintiff contends that this suit is not barred by a two-year statute of limitations, pursuant to 28 U.S.C. § 2401(b), since he did not know or have reason to know of the alleged negligence of defendant's employees until less than two years prior to the filing of plaintiff's claim.

plaintiff and all others similarly situated prior to surgery involving the urinary tract;

(B) Whether the Veterans Administration misrepresented or omitted essential information necessary for an informed consent by plaintiff and all others similarly situated;

(C) Whether the Veterans Administration made false and fraudulent statements or used coercion of any kind to induce the plaintiff or others similarly situated to consent to the aforesaid surgery;

(D) Whether the Veterans Administration failed to enforce its own directive of April 24, 1968, concerning such surgery and permitted it to be performed in violation of established policy and procedure.

For purposes of Rule 23(b)(3), Harrigan contends that these common questions of law or fact predominate over any questions affecting only individual members of the class in that the methods employed by the Veterans Administration in obtaining the consent to surgery from large numbers of patients were substantially similar and improper.

Upon filing the instant complaint, plaintiff concurrently propounded extensive interrogatories which requested the United States of America to state, *inter alia*, the name, present address, and age of all paralyzed veterans who have undergone urological surgery in Veterans Administration Hospitals from 1960 to the present, including but not limited to vesicotomies, ileal loops or any other bypass operation intended to eliminate the need for an indwelling catheter; the name and present address of the operating surgeon and the type of operation performed; the name and present address of the person or persons who obtained the consent for each surgical operation; a description of the information given to each patient prior to surgery to include the alleged purpose of the surgery and the risks involved; and a list of all written directives or instructions concerning urinary bypass operations on paraplegics received by each of the V. A. Hospitals performing said surgeries as well as the action taken with respect thereto.

On September 26, 1972, the United States filed a motion to dismiss and/or for summary judgment with regard, *inter alia*, to the class action allegations of the complaint on the grounds that the purported class could not meet the requirements of F.R.Civ.P. 23(a), 23(b)(1)(A) or 23(b)(3). The government also requested a stay of the extensive discovery sought by the plaintiff pending a determination of its motion. Plaintiff opposed defendant's motion on the basis that further discovery was required to determine the issues raised and propounded a second set of interrogatories to the defendant; subsequently, plaintiff filed a request to extend the time for filing its motion to confirm the class [2] and also filed a motion to compel defendant to answer plaintiff's interrogatories.

On August 10, 1973, the Court issued an order denying the government's motion to dismiss and/or for summary judgment pending further discovery, granted Harrigan's motion for an extension of time to move to confirm the class, and ordered the United States to answer plaintiff's interrogatories.

The United States failed to answer plaintiff's interrogatories within the time required by the Court's order, and Harrigan filed a motion for sanctions. The government thereupon answered ten of plaintiff's fourteen interrogatories and contended that the remaining four interrogatories were burdensome, oppressive and violated the physician-patient privilege.

Concurrently with answering plaintiff's interrogatories, the United States filed the instant motion for reconsideration of the Court's Order of August 13, 1973 and also requested the Court to

---

2. Under Local Rule 45(c) of this Court.

quash the unanswered four interrogatories. Specifically, the government contends that the Court should dismiss the class action allegations in the complaint because the members of the purported class have not filed administrative claims, as required by 28 U.S.C. § 2675(a), and that such a requirement is jurisdictional and must be met separately by each member of the class. The United States contends that further discovery is not required to determine the issue of whether this suit can be maintained as a class action because a class action is totally inappropriate here.

## RULE 23

Federal Rule of Civil Procedure 23 requires a plaintiff who seeks to bring suit as the representative of a class to overcome two hurdles. First, the plaintiff must satisfy all the prerequisites of Rule 23(a), and second, he must establish that his suit is appropriate for class action treatment under one of the three subdivisions of Rule 23(b). Katz v. Carte Blanche Corporation, 496 F.2d 747 (3rd Cir., filed Mar. 15, 1974) (en banc); Daye v. Commonwealth of Pennsylvania, 344 F.Supp. 1337 (E.D.Pa. 1972).

The Court has now determined that this suit cannot be maintained as a class action because plaintiff fails to satisfy the prerequisites of Federal Rule 23(a) and fails to meet the requirements of either Rule 23(b)(1)(A) or 23(b)(3) under which he seeks to bring the present litigation.

## SUBDIVISION (a) OF RULE 23

■■ In the present case, plaintiff's complaint fails to satisfy the prerequi-sites of Rule 23(a),[3] specifically 23(a)(2), which requires that there be questions of law or fact common to the class. The thrust of plaintiff's complaint is that the Veterans Administration failed to obtain the informed consent of the members of the purported class prior to surgery and that such surgery was negligently performed. The concept of informed consent is a complex one involving such issues as what information was supplied to each patient, what the emotional condition of each patient was, what each patient's understanding of the information conveyed was, and whether there was a necessity of dispensing with the requirement of informed consent due to emergency conditions. A determination of informed consent in each case depends on a separate inquiry into the facts surrounding each operation and an application of the facts to the governing legal principles. Since it is the substantive law of the state wherein the cause of action accrues which governs the liability of the United States on claims brought under the Federal Tort Claims Act, Ciccarone v. United States, 486 F.2d 253 (3rd Cir. 1973), the governing legal principles will vary according to the state where each operation took place. It is apparent, therefore, that the facts and law of this purported class suit will vary from case to case. This precludes the Court from finding common questions of law or fact with respect to the issue of informed consent. Moreover, a determination of negligence with regard to the surgeries themselves certainly requires an adjudication of the facts surrounding each particular case and an application of the facts to the various state laws likewise precluding a finding of common ques-

3. Rule 23(a) F.R.Civ.P. provides:
   (a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

tions of law or fact with respect to the issue of negligently performed surgeries.

## SUBDIVISION (b) OF RULE 23

Even if the plaintiff could satisfy all the prerequisites of Rule 23(a), including 23(a)(2), a class action in this suit cannot be maintained under the provisions of Rule 23(b). Plaintiff alleges that his suit may be maintained under either Rule 23(b)(1)(A) or 23(b)(3). A class action may be maintained under Rule 23(b)(1)(A) only if:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

As illustrations of Rule 23(b)(1)(A), the Advisory Committee Note refers to suits to invalidate bond issues and suits to determine riparian rights and duties. "The provision was designed to 'obviate the actual or virtual dilemma which would . . . confront the party opposing the class' when incompatible adjudications would trap him in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." Walker v. City of Houston, 341 F.Supp. 1124, 1131 (S.D.Texas 1971). The proper use of Rule 23(b)(1)(A) as a basis for maintaining a class suit may be seen in Technograph Printed Circuits, Ltd. v. Methode Electronics, 285 F.Supp. 714 (N.D.Ill.1968). In that case a plaintiff corporation instituted approximately 74 civil actions for patent infringement against approximately 80 defendants, in

18 different United States District Courts, seeking to enforce three patents. A number of the defendants counterclaimed not only for damaged but also for declaratory judgment as to the validity of plaintiff's patents. The common questions of the validity of plaintiff's patents, fraud on the government, and misuse of the patents on the part of the plaintiff were adjudicated as a class action under 23(b)(1)(A). The Court held that the prosecution of separate actions by the plaintiff against individual defendants would create a risk of inconsistent adjudications (including declaratory judgments) on these common questions thus preventing the patentee from enforcing one or more patents against some alleged infringers while permitting enforcement thereof against others. Clearly, incompatible standards of conduct for the plaintiff could have been established. In the present situation, on the other hand, independent adjudications could result in the United States being ordered to pay damages to certain members of the purported class in some cases and not being ordered to pay damages to other members of the class in other cases. These inconsistencies, however, would not place the defendant in a dilemma of the sort contemplated by Rule 23(b)(1)(A), for the varying adjudications would not preclude full compliance with the judgment in each case.

Nor can the suit be maintained as a class action under Rule 23(b)(3). A class action brought pursuant to Rule 23(b)(3) must satisfy two requirements in addition to the prerequisities of subdivision (a) of the rules: predominance of common questions of law or fact and superiority of the class action over other available methods of adjudication.[4]

---

4. Rule 23(b)(3) F.R.Civ.P. provides that the Court must find: that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the

controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the

The requirement that there not only be common questions of fact or law but also that the common questions predominate over the individual issues is certainly an even more stringent standard than that prescribed by Rule 23(a)(2) that there simply be common questions of law or fact. See 7 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1763, at 610 (1972). The overriding issue in this case with regard to informed consent is not what procedures the Veterans Administration used to convey information about surgery to their patients but whether, considering all the circumstances, each patient gave his informed consent to the operation. This requires a detailed examination of all the facts surrounding each operation. As the Third Circuit has stated, the doctrine of informed consent requires the "courts to develop a delicate balance between the right of the patient to choose the treatment he wishes to undergo and the freedom of the physician to practice responsible and progressive medicine without fear of frequent litigation." Dunham v. Wright, 423 F.2d 940, 942 (3rd Cir. 1970). All the circumstances of each operation must be examined to achieve this delicate balance. It is plaintiff's contention that common questions predominate over individual issues in that the methods employed by the Veterans Administration in obtaining consent to surgery from large numbers of paralyzed veterans were substantially similar. Whether this contention is borne out by the facts can only be determined by a detailed examination of the facts in each case. Aside from whatever standard written consent forms patients might have signed, the trier of fact must know what specific communications passed between each patient and his doctor. Such an inquiry must "degenerate into a separate trial for each

class member." In such a situation a class action is clearly inappropriate under Rule 23(b)(3). Bailey v. Sabine River Authority, State of Louisiana, 54 F.R.D. 42, 43 (W.D.La.1971); Caceres v. International Air Transport Association, 46 F.R.D. 89, 95 (S.D.N.Y.1969); Amendments to Rules of Civil Procedure, Advisory Committee's Notes, 39 F.R.D. 69, 103 (1966).

Not only do common questions not predominate over those affecting individual members in this case, but also the Court concludes that a class action is not superior to other available methods for the fair and efficient adjudication of this controversy. In this regard we have found the Advisory Committee Note to the 1966 revision of Rule 23 instructive. There, the Committee pointed out that:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.

The foregoing accurately describes the present situation. Because the facts surrounding each class member's claim must necessarily differ and because the law applied will vary according to the state in which the operation took place, no one adjudication can settle the question of liability of the defendant to all members of the class. A class action here would degenerate into multiple law suits separately tried.

The Court is not unmindful that a class action has been found appropriate in at least one "mass accident"[5] involv-

---

class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

5. The very term "mass accident" implies a series of injuries arising out of a single tortious occurrence. The present suit involves numerous allegedly tortious acts.

ing serious personal injury. In Petition of Gabel, 350 F.Supp. 624 (C.D.Cal. 1972), an airplane crash case, a class action was allowed with respect to liability only. But the Court in *Gabel* noted that its case was particularly appropriate for class action treatment, since "[o]ne unitary set of facts will determine the cause of the crash and the extent of the liability therefor . . . ." and that "the *right* of each member of the class of passengers' survivors to recover will be established by a common set of facts as opposed to a peculiar and different set of facts applicable to the amount of damages of each different plaintiff in the class." 350 F.Supp. at 628. As this Court has already demonstrated, such is not the situation in the present case, and our position with regard to the use of class actions is not contrary to that of *Gabel* nor to that of those commentators [6] who have advocated the use of class actions in "mass accident" cases wherein liability to all members of the class can be determined in one proceeding.

## FAILURE OF THE CLASS TO MEET JURISDICTIONAL REQUIREMENTS

■ In its motion for reconsideration of this Court's order of August 10, 1973, defendant specifically requested the Court to dismiss the class action for failure to comply with a jurisdictional requirement of the Federal Tort Claims Act. Although not basing its order solely on this ground, the Court is of the opinion that the class action is jurisdictionally defective.

Pursuant to 28 U.S.C. § 2675(a), the Federal Tort Claims Act requires the filing of an administrative claim prior to the institution of suit:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . .

It has been held that this requirement is an absolute prerequisite to an individual instituting an action against the government under the Federal Tort Claims Act. Best Bearings Co. v. United States, 463 F.2d 1177 (7th Cir. 1972); Bialowas v. United States, 443 F.2d 1047 (3rd Cir. 1971). The Third Circuit, in *Bialowas*, an action against the government for property damage and personal injuries sustained when a mail truck collided with plaintiff's car, has stated the applicable law as follows:

As a sovereign, the United States is immune from suit save as it consents to be sued. The terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Although the Federal Tort Claims Act allows suits against the Government for torts committed by its employees while in the scope of their employment, it specifically requires an initial presentation of the claim to the appropriate federal agency and a final denied by that agency as a prerequisite to suit under the Act. This requirement is jurisdictional and cannot be waived. *Id.* at 1048–1049.

Plaintiff, who has filed an administrative claim,[7] seeks to represent a class of all paraplegics who have undergone similar urological surgery in Veterans Administration Hospitals. Defendant's

---

6. 3 B J. Moore, Federal Practice ¶ 23.45[3], at 23–811 n. 35 (2d ed. 1969); 7–A C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1783, at 117 (1972).

7. Plaintiff advised the Court on June 28, 1973 that the Veterans Administration had denied his administrative claim.

answers to plaintiff's interrogatories reveal that only seven members of the purported class,[8] including the named plaintiff, have filed such administrative claims. Therefore, because filing a claim is a jurisdictional prerequisite, unless the filing of an administrative claim by one person on his own behalf is sufficient to act as a claim for a class of individuals, the Court does not have jurisdiction over the members of the purported class who have not filed an administrative claim.[9]

In Zahn v. International Paper Co., 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), an attempted class action under Rule 23(b)(3) by owners of lakeshore property charging defendant with pollution of the lake, only the named plaintiffs, but not the unnamed plaintiffs, could show damages in the jurisdictionally required amount. The Supreme Court held that a class action was not maintainable since the separate claims of all the members of the class failed to satisfy independently the $10,000 jurisdictional requirement of 28 U.S.C. § 1332. It is concluded from the *Zahn* case that the jurisdictional requirement in the present case must also be met independently by the members of the purported class. To allow the named plaintiff here, by filing an administrative claim on his own behalf, to satisfy the administrative claim requirements for unnamed plaintiffs would constitute a prohibited expansion of the jurisdiction of the federal courts. *See* Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Therefore, the requirement that each member of the class independently file an administrative

claim cannot be waived, and the Court does not have jurisdiction over the members of the purported class.

### CONCLUSION

For all the above reasons, the Court finds, pursuant to F.R.Civ.P. 23(c)(1), that this suit cannot be maintained as a class action and that insofar as it alleges a class action, the complaint must be dismissed.

---

8. One claim (of a veteran living in Houston, Texas) was denied for running of the statute of limitations (28 U.S.C. § 2401(b)) and no suit has been filed. Five other claims were denied in which suits have been filed —four in the Southern District of Texas and the present action. A seventh claim has just been filed by a veteran treated by the Veterans Administration Hospital, Castle Point, New York.

9. Nor can a class suit be maintained by limiting the class to the seven members who have filed claims, since the first prerequisite of Rule 23(a) is that "the class is so numerous that joinder of all members is impracticable."