**Joseph F. SMITH**

v.

**PIEDMONT AVIATION, INC., and Delta Air Lines, Inc.**

**No. CA 3-74-768-C.**

United States District Court,
N. D. Texas,
Dallas Division.

May 5, 1976.

Gary Kessler, Dallas, Tex., for plaintiff.

L. W. Anderson and Lewis R. Sifford, Anderson, Henley, Shields, Bradford, Pritchard & Miller, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

### WILLIAM M. TAYLOR, Jr., Chief Judge.

Plaintiff brought suit against Delta Airlines, Inc., (Delta) and Piedmont Aviation, Inc., (Piedmont) alleging violation of the provisions of the Federal Aviation Act of 1958, 49 U.S.C. § 1374(b) by Piedmont, and alleging common law fraud and violation of the Texas Deceptive Trade Practices Act by Piedmont and Delta. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and 1337, as well as in personam jurisdiction. The claims of common law fraud and deceptive trade practices are before the Court under its pendent jurisdiction.

### Findings of Fact

In early April, 1974, Plaintiff made a confirmed reservation through Delta for carriage on April 26, 1974, on Piedmont Flight 944 from Atlanta, Georgia, to Bluefield, Virginia. Delta is authorized by Piedmont to book reservations for Piedmont flights. Plaintiff was to be a participant in the wedding of a close friend which was to take place in Tazewell, Virginia, on April 27, 1974. Plaintiff informed Delta of this and of the fact that he was required to be at a wedding rehearsal in Tazewell by 4:00 P.M. on the date of the flight. Flight 944 would have placed Plaintiff in Tazewell by that hour. On two occasions prior to the date of Flight 944, Plaintiff recontacted Delta and was assured on each occasion that he held a confirmed reservation for Flight 944 and that he was assured a seat on that flight.

On April 26, 1974, Plaintiff timely presented himself for boarding on Flight 944; in fact, Plaintiff was seated in the Piedmont departure lounge some two hours before the flight was to depart. Piedmont did not employ a pre-flight check-in for Flight 944 but merely had boarding agent James R. McKenzie collect ticket coupons and board the flight. Upon reaching the boarding counter, Plaintiff was informed that he would not be allowed to board Flight 944. In addition to Plaintiff, seven other confirmed reserved ticket holders were denied boarding on Flight 944.

The reason for this denial was that Flight 944 had 58 available seats and on April 26, 1974, 63 persons appeared for boarding, all holding confirmed reservations. Piedmont had sold five more confirmed reserved tickets than the plane had seats. Plaintiff and the other passengers who presented themselves for boarding were considered by Piedmont to be oversold passengers. An oversold passenger is one that presents himself at the ticket lift point at the time specified and the flight for which he holds a confirmed reservation departs without him.

In 1967 Piedmont filed boarding priority rules with the Civil Aeronautics Board and made them a part of Piedmont's Company Manual. These boarding priority rules provided that in the event of oversale, all passengers who were in the same category were to be boarded according to the time and date of the booking of their reservation. However, rather than following their priority rules, Piedmont had instructed their employees to disregard them if determining time and date of booking would delay the flight. Mr. McKenzie boarded Flight 944 on a first come-first serve basis in violation of the priority rules.

After being informed by Mr. McKenzie that he would not be allowed to board the flight, Plaintiff requested that his luggage be removed. He informed Mr. McKenzie of the wedding rehearsal at 4:00 P.M. that day, and that all his money was in his luggage. At this time, Mr. Griffitts, a Pied-

mont supervisor, arrived at the gate to handle the oversale. Mr. Griffitts refused to remove Plaintiff's luggage.

Plaintiff requested that Piedmont arrange for a private flight to transport him to Bluefield which was refused by Mr. Griffitts. Plaintiff was, however, offered alternate air transportation by Mr. Griffitts. Plaintiff refused this offer since he would have had to fly standby and Piedmont's computers registered that all fights on that date were full. Plaintiff renewed his request for a private flight and was treated rudely and insulted by Mr. Griffitts. Plaintiff then requested to speak to Mr. Griffitts' supervisor and after some delay spoke to a Mr. Johnston who was the supervisor.

Mr. Johnston tendered to Plaintiff a denied boarding compensation check and partial refund check. Plaintiff did not cash either of these checks. He had selected a flight from Atlanta to Roanoke, Virginia, which was to depart one and a half hours later. The partial refund represented the fare from Roanoke, Virginia, to Bluefield, West Virginia, since Plaintiff had paid to Delta a fare for travel from Atlanta to Bluefield.

Upon reaching Roanoke, Virginia, Plaintiff was forced to rent an automobile to drive to Tazewell, Virginia. Plaintiff had no money since his luggage containing his money was not removed from Flight 944, and he could not cash the checks tendered to him since these would have constituted a release of all liability pursuant to Civil Aeronautics Board regulations. After much discussion, Plaintiff was able to use a credit card to rent the automobile, which cost $51.80 to rent. He was forced to drive over unfamiliar mountain roads, knowing that he would not arrive in Tazewell in time for the wedding rehearsal. He did in fact miss the rehearsal and a portion of the rehearsal dinner that followed. Plaintiff suffered a great deal of emotional distress and humiliation as a result of being denied boarding on Flight 944.

The record disclosed a knowing, continuous and flagrant disregard for the boarding priority rules held by Piedmont with the Civil Aeronautics Board for a period of some years. Additionally, Plaintiff was treated rudely and discourteously by Piedmont's employees. Piedmont exhibited a conscious disregard for Plaintiff's rights by its conduct. However, neither its conduct nor any acts of Delta constituted fraud or deceptive trade practices.

*Conclusions of Law*

■ The Court has concluded that Piedmont violated the provisions of the Federal Aviation Act of 1958, 49 U.S.C. § 1374(b), in that it unjustly and unreasonably discriminated against Plaintiff by giving undue and unreasonable preference to others. It did this by failing to follow its boarding priority rules on file with the Civil Aeronautics Board and by failing to show how its priority rules legitimized the conduct in denying Plaintiff carriage on Flight 944.

■ Plaintiff is entitled to recover compensatory damages of $1,051.80 from Piedmont, consisting of $51.80 for actual damages and $1,000.00 for emotional distress and humiliation. Plaintiff is also entitled to recover punitive damages of $1,500.00 from Piedmont for its knowing and continuing violation of its boarding priority rules.

■ The failure of Delta to disclose to Plaintiff the possibility of oversales of confirmed reservations does not constitute common law fraud on the part of Delta or Piedmont, and is outside the scope of the Texas Deceptive Trade Practices Act as a matter of law.

It is therefore ORDERED, ADJUDGED and DECREED that Piedmont pay Joseph Smith the sum of $2,551.80 as damages in this case.