**Morris WILENSKY et al.**

v.

**OLYMPIC AIRWAYS, S. A.**

**Civ. A. No. 75–488.**

United States District Court, E. D. Pennsylvania.

Jan. 26, 1977.

Gerald A. Inglesby, Solo & Padova, Philadelphia, Pa., for plaintiffs.

Sidney L. Wickenhaver, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Plaintiffs Morris and Pearl Wilensky and their son Roy instituted this action against Olympic Airways, S.A. ("Olympic"), a foreign air carrier, seeking compensatory and punitive damages as well as injunctive relief. In Count I of their complaint, they allege violations of Section 404(b) of the Federal Aviation Act of 1958, 49 U.S.C. § 1374(b) (1970), and in Counts II and III they allege breach of contract of carriage and fraudulent misrepresentation. Jurisdiction is predicated upon 28 U.S.C. § 1337, 28 U.S.C. § 1332 and pendent jurisdiction.

There is presently before the Court plaintiffs' motion for class determination pursuant to F.R.C.P. 23(c)(1). The defendant opposes class action certification.

Prior to June 25, 1973, plaintiffs purchased tickets for Olympic's flight 410 which was scheduled to depart from New York City at 9:45 p. m. on July 9, 1973. Its destination was Athens, Greece. Upon check-in at the airport two hours before scheduled departure, an agent of defendant informed plaintiffs that they could not be accommodated because the flight was overbooked. They were given passage on a subsequent Olympic flight which departed the following day approximately 20 and ½ hours after flight 410 was scheduled to depart.

Plaintiffs seek to bring this suit as representatives of a class of 2,083 persons who held reservations and were denied passage because of lack of space on Olympic Airways flights scheduled to depart from New York and arrive in Athens, Greece in the period from February 21, 1973 through February 19, 1975. Plaintiffs allege questions of law and fact common to the class as follows:

(a) Whether defendant substantially overbooked its flights;

(b) Whether defendant made, gave or caused any undue or unreasonable preference or advantage to nonmembers of the class in any respect whatsoever or subjected members of the class to any unjust discrimination or undue or unreasonable prejudice or disadvantage in any respect whatsoever, pursuant to 49 U.S.C. § 1374(b);

(c) Whether defendant denied the members of the class the right to fair, equal or non-discriminatory treatment;

(d) Whether defendant has engaged in a pattern or practice of substantial overbooking;

(e) Whether defendant intentionally misrepresented the availability of alternative transportation;

(f) Whether defendant engaged in a practice of intentionally concealing its overbooking practice;

(g) Whether defendant breached its contract of carriage with ticketholders by failing to undertake to use its best efforts to carry the passengers and baggage with reasonable dispatch, or otherwise breached its obligations under the contract.

Rule 23 requires a plaintiff who seeks to bring suit as the representative of a class to meet two requirements. First, the plaintiff must satisfy all the prerequisites of Rule 23(a) and, second, he must establish that his suit is appropriate for class action treatment under one of the three subdivisions of Rule 23(b). The Court has determined that this action cannot be maintained as a class action because plaintiffs fail to satisfy the prerequisites of Rule 23(a) and fail to meet the requirements of either Rule 23(b)(1)(A), (b)(1)(B) or 23(b)(3) under which they seek to bring this present litigation.

## Count I

Count I of the plaintiffs' complaint fails to satisfy the prerequisites of Rule 23(a)[1] specifically 23(a)(2), which requires that there be questions of law or fact common to the class. Count I alleges a violation of Section 404(b) of the Federal Aviation Act of 1958, which provides that an air carrier may not unreasonably prejudice or unjustly discriminate against any person.[2] This statute has been interpreted as creating a private right of action for damages for passengers who were the victims of discrimination. *E. g., Fitzgerald v. Pan American World Airways, Inc.*, 229 F.2d 499 (2d Cir. 1956); *Wills v. Trans World Airlines, Inc.*, 200 F.Supp. 360 (S.D.Cal.1961). The precise issue raised in Count I, i.e., the rights of passengers who were denied passage on a flight for which they held reservations because of overbooking (passengers who were "bumped"), was extensively reviewed by the Court of Appeals for the District of Columbia in *Nader v. Allegheny Airlines, Inc.*, 167 U.S.App.D.C. 350, 512 F.2d 527 (1975).[3] Citing *Archibald v. Pan American World Airways, Inc.*, 460 F.2d 14 (9th Cir. 1972), the *Nader* Court held that the practice of overbooking does not per se give rise to an actionable § 404(b) violation. *See also, Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332 (3d Cir. 1975). The Court in *Nader* recognized however, that the determination of which passengers will be denied boarding in the event of overbooking presents the possibility of discriminatory action. In response to this problem, the Civil Aeronautics Board promulgated regulations requiring domestic air carriers to establish and enforce non-discriminatory priority rules for determining which passengers will be bumped in the event that a flight is oversold.[4] The Court held that a carrier's

---

1. Rule 23(a) F.R.C.P. provides:
    (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

2. 49 U.S.C. § 1374(b) (1970) provides: "No air carrier or foreign air carrier shall make, give, or cause any undue or unreasonable preference or advantage to any particular person, port, locality, or description of traffic in air transportation in any respect whatsoever, or subject any particular person, port, locality, or description of traffic in air transportation to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

3. In *Nader v. Allegheny Airlines*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), the Supreme Court reversed the Circuit Court's holding on the question of fraudulent misrepresentation and did not address the cause of action under the Federal Aviation Act.

4. § 250.3 provides:
    Priority Rules. Every carrier shall establish priority rules and criteria for determining which passengers holding confirmed reserved space shall be denied boarding on an oversold flight. Every carrier shall file with the Chief, Passenger and Cargo Rates Division, Bureau of Economics, two copies of such rules and criteria, including that portion of its company manual instructing employees on the order of boarding priorities in case of, an oversold flight. Such rules and criteria shall not make, give or cause any undue or unreasonable preference or advantage to any particular person or subject any particular person to any unjust discrimination or any un-

violation of its own non-discriminatory priority rules gives rise to a § 404(b) cause of action.[5] In this case, however, the defendant is a foreign air carrier and was not required to establish priority rules until March 1, 1975,[6] which is after the period covered by this suit (February 21, 1973 through February 19, 1975). Even though not mandated, the defendant has stated that it did possess priority rules which it applied in determining which passengers would be bumped in the case of an oversale.

Although we recognize that the determination of whether there is a proper class does not depend on the existence of a cause of action, *Eisen v. Carlisle v. Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir. 1970), *cert. denied,* 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970), identification of the issues that would be presented at trial is essential in analyzing the appropriateness of a class certification, and in applying the standards of Rule 23. *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756–57 (3d Cir.), *cert. denied* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); *Bogosian v. Gulf Oil Corp.,* 62 F.R.D. 124, 131 (E.D.Pa. 1973). The burden is on the plaintiff to show that the action meets the prerequisites of Rule 23. *Poindexter v. Teubert,* 462 F.2d 1096 (4th Cir. 1972); *City of Philadelphia v. Emhart Corporation,* 50 F.R.D. 232

(E.D.Pa.1970). We interpret plaintiffs' allegation to be that during the period in question the alleged members of the class were discriminated against because the defendant had no priority rules and therefore no basis on which to make a non-discriminatory decision in bumping passengers, or that defendant had priority rules but failed to follow them. In either event, a determination of how the decision to bump a particular class member was made depends on a separate inquiry into the facts surrounding each bumping. Proving the elements of the cause of action, which were identified in *Nader* as (1) the plaintiff possessed a designated priority and (2) the carrier boarded persons with a lower priority, would require a review of each individual class member's status. This individual inquiry precludes our finding the existence of common questions of law and fact.

### Subdivision (b) of Rule 23

Even if the plaintiffs could satisfy all the prerequisites of Rule 23(a), including 23(a)(2), a class action cannot be maintained under the provisions of Rule 23(b). Plaintiffs allege that this suit can be maintained pursuant to Rule 23(b)(3).[7] A class action brought pursuant to Rule 23(b)(3) must satisfy two requirements in addition to all of the prerequisites of subdivision (a) of the rules: predominance of common questions

---

due or unreasonable prejudice or disadvantage in any respect whatsoever.

CAB regulations also provide for payment of denied boarding compensation to "bumped" passengers who are not transported to their ultimate destination within 2 hours of the scheduled arrival time of their original flight, or, in the case of overseas flights, within 4 hours. 14 C.F.R. §§ 250.4, 5, 6. Acceptance by the passenger of the denied boarding compensation constitutes liquidated damages for all damages incurred by the passenger as a result of the carrier's failure to provide the passenger with reserved space. 14 C.F.R. § 250.7.

5. *See Smith v. Piedmont Aviation, Inc.,* 412 F.Supp. 641 (N.D.Texas 1976); *Kaplan v. Lufthansa German Airlines,* 12 Av.Reports ¶ 17933 (E.D.Pa.1973); *Mortimer v. Delta Air Lines,* 302 F.Supp. 276 (N.D.Ill.1969).

6. 39 Fed.Register 38084, effective date extended, 39 Fed.Register 44197.

7. Rule 23(b)(3) provides that the Court must find that:

The questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) The interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

of law or fact and superiority of the class action over other available methods of adjudication. The requirement that there not only be common questions of fact or law but also that the common questions predominate over the individual issues is an even more stringent standard than that prescribed by Rule 23(a)(2) that there simply be common questions of law or fact. See 7, *C. Wright & A. Miller, Federal Practice & Procedure:* Civil § 1763, at 610 (1972); *Harrigan v. United States,* 63 F.R.D. 402, 407 (E.D.Pa.1974) As stated in *Sommers v. Abraham Lincoln Federal Savings & Loan Ass'n,* 66 F.R.D. 581, 590 (E.D.Pa.1975):

> [T]he predominance requirement seeks to protect the Court and the public from the confusion and waste of resources occasioned by collective adjudication of separate claims or the separate adjudication of common claims.

Our previous discussion demonstrates that plaintiffs cannot meet this predominance standard. Because the facts surrounding each class member's claim must be separately considered, no one adjudication can settle the question of the liability of the defendant to all members of the class. If the named plaintiffs were able to establish that they possessed a designated priority and that the carrier boarded persons with a lower priority, this could not establish a cause of action on behalf of any other class members. For these reasons we also conclude that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy.

In *D'Ambro v. Eastern Air Line, Inc.,* C.A. No. 75–918 (filed August 15, 1975, E.D. Pa.), my learned colleague, Judge Newcomer, denied class action certification in a "bumping" case brought under 49 U.S.C. § 1374(b) stating: "Thus the liability of defendant to any of the 5,000 persons in the class plaintiffs propose in their amended complaint could be established only individually, rather than through the collective approach of a class action."

Plaintiffs also claim that they satisfy the requirements of Rule 23(b)(1)(A) and (b)(1)(B).[8] These subsections are clearly inapplicable. Rule 23(b)(1)(A) is designed to protect a defendant from the risk that varying adjudications in individual law suits with members of a class might establish incompatible standards to govern defendant's conduct. In addition, this subsection was not intended to authorize certification where a primary objective of the class action is monetary damages. *Bogosian v. Gulf Oil Corporation, supra,* 62 F.R.D. at 132. In the present action the predominant relief sought is the recovery of money damages. Although the plaintiffs also request injunctive relief, the injunction is not their primary objective. Furthermore, the defendant's conduct in regard to bumping is governed by CAB regulations effective March 1, 1975. The doctrine of primary jurisdiction would therefore preclude this Court from awarding injunctive relief. *Wills v. Trans World Airline, supra,* 200 F.Supp. at 366.

Rule 23(b)(1)(B) seeks to protect potential claimants where adjudications as to other claimants would be dispositive of the interests of the potential class. In this case a determination of issues as to one class member would not be dispositive of similar claims by any other class member. The mere fact that one claimant might be successful and another unsuccessful creates no basis for a Rule 23(b)(1)(B) certification. In *Rodriquez v. Family Publication Service, Inc.,* 57 F.R.D. 189, 192–93 (C.D.Cal.1972), the Court stated:

**8.** A class action may be maintained under these sections only if:

23(b)(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudication with respect to individual members of the class which would establish incompatible standards for the party opposing the class or

(B) adjudication with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

. . . the Advisory Committee's Note to clause (B), demonstrates that the clause was intended to apply to situations, not present here, where the members of the class each have rights in a common organization, fund or contract which ought to be adjudicated together in order to avoid unfair legal or practical advantage by one over another member of the class.

In the instant case separate adjudication by each class member would not preclude the defendant's full compliance with the judgment in each case nor the ability of other members of the class to receive a separate adjudication of their rights. Neither Rule 23(b)(1)(A) nor (b)(1)(B) permit us to certify a class.

### Amended Complaint

In their original complaint, plaintiffs sought to represent 2,083 passengers who were bumped from Olympic Airways flights to Athens, Greece departing from New York City and 10 passengers who were bumped from flights departing from Chicago, Illinois. In their amended complaint and motion for class certification, plaintiffs deleted from the original class the 10 passengers departing from Chicago and limited the class to the 2,083 passengers who were denied boarding on flights departing from New York. The plaintiffs, however, also set forth in their amended complaint a new legal theory. This new theory claims that because 2,083 New York passengers were bumped in the relevant period whereas only 10 Chicago passengers were bumped, defendant discriminated against the passengers who boarded in New York. A consideration of plaintiffs' new theory does not

alter our holding that Count I does not meet the requirements of 23(a) and 23(b). Even if fewer people boarding in Chicago were bumped than those boarding in New York, plaintiffs still have the burden of proving that defendant discriminated against each person who was bumped. In trying to establish that New York passengers were discriminated against when compared to Chicago passengers, the facts and circumstances surrounding the bumping of each of the 2,083 New York passengers would have to be explored in order to compare their bumping to that of the 10 Chicago passengers. As previously discussed, this individual inquiry precludes our finding that there are questions of law or fact common to the class and that such questions of law or fact predominate over any question affecting only individual members.

### Count II

In Count II, plaintiffs allege that the defendant breached its contract of carriage.[9] Both plaintiffs and defendant agree that the terms of this contract are set forth on the ticket and provide as follows:

> Carrier undertakes to use its best efforts to carry the passenger . . . with reasonable dispatch.[10]

With respect to Count II, we also find that the plaintiffs have not satisfied the requirements of Rule 23(a)(2) and 23(b)(1)(A), 23(b)(1)(B) or 23(b)(3). Whether or not defendant breached the contract of carriage requires an individual inquiry into the treatment received by each passenger. Those for whom the defendant arranged prompt alternative transportation may well have received the defendant's "best efforts" while others who were not so accommodat-

---

9. In *Polansky v. Trans World Airlines, Inc.,* supra, 523 F.2d at 336, n. 13, our Third Circuit recognized that certain discriminatory conduct can constitute a breach of contract. The Court pointed out, however, that something more than such breach of contract must be shown to establish a violation of § 1374(b). "In our view that something more must be a showing that the breach was the result of *discrimination* by the airline and that the breach had the effect of denying *access* to air facilities." (emphasis in original).

10. The ticket also provides that in transportation between a place in the United States and any place outside the United States, the tariffs in force in the United States apply with respect to carriage and other services performed by the carrier. Neither side has alleged the applicability of any such tariffs and, for the purposes of this motion to certify a class, we will construe the contract in accordance with the understanding of the parties.

ed may be able to establish that the defendant did not use its best efforts. The breach of contract claim, therefore, involves individual inquiries of the nature required in Count I and does not satisfy the test of 23(b)(3) that questions of law or fact common to the members of the class predominate over any questions affecting only individual members. Rule 23(b)(1)(A) and 23(b)(1)(B) are also inapplicable for the reasons heretofore discussed.

### Count III

In Count III, plaintiffs claim that at the time of bumping the defendants intentionally misrepresented the availability of alternative transportation and that, through the use of promotional literature, defendant engaged in a practice of intentionally concealing its practice of overbooking. These allegations appear to set forth claims based on a common law tort of fraudulent misrepresentation. *See, Nader v. Allegheny Airlines*, 512 F.2d at 541. We find that plaintiffs' alleged tort action set forth in Count III cannot proceed as a class action.

A claim for fraudulent misrepresentation requires that the plaintiff prove individual reliance by each class member on the misrepresentation.[11] *Nader v. Allegheny Airlines, supra*, 512 F.2d at 541, n. 32; *Ungar v. Dunkin' Donuts of America, Inc.*, 68 F.R.D. 65, 144 (E.D.Pa.1975); *rev'd on other grounds*, 531 F.2d 1211 (3d Cir. 1976).[12] In

*Ungar*, one of the claims that the Court refused to certify as a class action was an allegation by franchisees that the franchisor's alleged misrepresentations concerning the financial aspects of the business constituted the common law tort of fraudulent misrepresentation. The Court held that individual and not common issues predominated because the franchisor's written promotional materials had varied substantially from time to time and from geographical area to area and because there might have been variations in oral representations relied on by plaintiffs. 68 F.R.D. at 144–45. In the present action, the same issues are present, for the defendant's promotional literature may have varied over the two year period covered in this alleged class action and the reliance of each class member upon the alleged misrepresentation would, of course, require a separate finding of fact for each passenger.

Furthermore, whether at the time of bumping defendant intentionally misrepresented the availability of alternative transportation would likewise require separate findings of fact, both as to the representation and the passenger's reliance thereon.

### Claim for Punitive Damages

In this action plaintiffs are seeking not only compensatory damages but punitive damages as well. Punitive damages may

---

**11.** Plaintiff relies on cases in the securities field in support of the contention that reliance does not have to be proved. However, *Affiliate Ute Citizens v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) and *Kohn v. American Metal Climax, Inc.*, 458 F.2d 255 (3d Cir. 1972) both relied on a statutory interpretation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the regulations promulgated by the Securities & Exchange Commission. In *Dorfman v. First Boston Corporation*, 62 F.R.D. 466, 471, n. 2 (E.D.Pa.1974), the Court reaffirmed the need to prove reliance in a common law tort action. The Court said:

> The cases which read a reliance requirement into Section 10(b) and Rule 10b–5 did so chiefly by analogizing to the tort of deceit at common law. In order to recover damages for deceit, a plaintiff must show that he relied upon the alleged misrepresentation in taking or refraining from action and that his

reliance was justifiable. *See Kohn v. American Metal Climax, Inc., supra*, 458 F.2d at 288 (Adams, J., concurring and dissenting). The common law test of reliance—whether "the misrepresentation is a substantial factor in determining the course of conduct which results in the recipient's loss," Restatement, Torts § 546 (1938)—was held to have been "carried over into civil suits under Rule 10b–5." *List v. Fashion Park, Inc., supra*, 340 F.2d [457] at 463.

**12.** Variations in the manner of reliance do not automatically defeat a class action. *Entin v. Barg*, 60 F.R.D. 108, 112–114 (E.D.Pa.1973). However, as stated by the Advisory Committee Notes to Rule 23, "although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed."

be awarded to punish a defendant for outrageous conduct. "Mere inadvertence or even gross negligence will not suffice to support an award of punitive damages . . . The tort must be 'aggravated by evil motive, actual malice, deliberate violence or oppression.'"[13] *Nader v. Allegheny Airlines*, 512 F.2d at 549 (citations omitted). In *Nader*, the Court examined the record in search of evidence that:

> Allegheny refused to board Nader for his activities against airlines or because of any other nefarious reason . . . [or that Nader was] treated discourteously. 512 F.2d at 550.

If an award of punitive damages could be established as to any member of the class, such individual would have to prove that defendant's conduct toward him was activated by evil motive or actual malice. This determination would have to be based upon the particular facts surrounding that individual's claim.

Accordingly, we deny class certification as to all three counts and enter the attached Order:

### ORDER

And now, to wit, this 26th day of January, 1977, upon consideration of plaintiffs' amended motion to certify as a class action Count I, Count II, and Count III of plaintiffs' amended complaint, and the opposition thereto, it is hereby ORDERED and DECREED that plaintiffs' motion is DENIED.

---

13. *Quoting Black v. Sheraton Corp. of America*, 47 F.R.D. 263, 271 (D.D.C.1969).