DATED: *November 27, 1985*

CALEB & CO. and Unit & Co., partnerships, on behalf of themselves and all others similarly situated, Plaintiffs,
                    v.
E. I. DuPONT DE NEMOURS & COMPANY, First Jersey National Bank and Conoco, Inc., Defendants.

No. 84 Civ. 4075 (RWS).

United States District Court,
S.D. New York.

April 30, 1986.

Breed, Abbott & Morgan, New York City (Thomas A. Shaw, Jr., Thomas W. Kelly and Howard S. Wolfson, of counsel), for plaintiffs.

Cravath, Swaine & Moore, New York City (Ronald S. Rolfe, Alan R. Glickman and Marc J. Apfelbaum, of counsel), for defendant E.I. DuPont de Nemours & Co.

Latham & Watkins, New York City (Job Taylor, III, of counsel), for defendant First Jersey Nat. Bank.

## OPINION

SWEET, District Judge.

Plaintiffs Caleb & Co. and Unit & Co. (collectively, "Caleb") have moved pursuant to Rule 23(c)(1), Fed.R.Civ.P., for an order certifying a class of plaintiffs in this action. Caleb asserts in its complaint that defendants E.I. DuPont de Nemours and Co. ("DuPont"), First Jersey National Bank ("First Jersey") and Conoco, Inc. ("Conoco"), violated Rule 14e–1(c), as promulgated under the Securities Exchange Act of 1934, and their contractual obligations by delaying payments to Conoco shareholders who tendered shares in exchange for cash in response to DuPont's tender offer in 1981. The facts underlying this action are fully set forth in this court's opinion of December 28, 1984. *See Caleb v. DuPont*, 599 F.Supp. 1468 (S.D.N.Y.1984). For the reasons set forth below, Caleb's motion for class certification will be granted.

**Discussion**

Caleb now seeks to certify a class which would include:

The plaintiffs and all other persons and entities who tendered shares of Conoco to DuPont which were accepted by it on August 5, 1981 in exchange for cash pursuant to the Cash Tender Offer, and for which DuPont failed to pay cash (a) promptly after the termination of the Cash Tender Offer (First Cause of Action); or (b) as promptly as practicable after the said acceptance by DuPont, provided, however, that there shall be excluded from the class any tendering shareholder as to whom such payment was made on or before the fifth business day following said acceptance by DuPont (Second Cause of Action). For purposes of identifying and defining class members the tendering shareholders shall be deemed to have been paid cash on the "date paid" as set forth in the First Jersey National Bank Account Reconciliation Printout (ARP), produced herein by the defendants.

In support of its motion for class certification, Caleb relies on Rule 23(a) and 23(b)(3), Fed.R.Civ.P.

■ There is little dispute that the proposed class in this action satisfies the four preliminary requirements set forth in Rule 23(a). First, the records disclosed by the defendants in the cause of discovery indicate that several thousand tenderors were not paid cash until after termination of the tender offer on August 17, 1981. Given these large number of investors, their nationwide residences, and individually modest claims, it is apparent that joinder would be impracticable. *See Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir.1968); *Avagliano v. Sumitomo Shoji America, Inc.*, 103 F.R.D. 562, 580 (S.D.N.Y.1984); *Somerville v. Major Exploration, Inc.*, 102 F.R.D. 500, 503 (S.D.N.Y.1984).

The basic requirement of Rule 23(a)(2) that there be "questions of law and fact common to the class" is also satisfied here. As more fully discussed below in the analysis of Rule 23(b)(3), the claims asserted by the plaintiffs raise common legal issues regarding the interpretation of particular provisions in the DuPont prospectus, and common factual issues regarding the defendants' actions taken in connection with the tender offer.

The claims by the representative parties also appear to be "typical" of the claims of the entire class. Under this requirement, the representatives' claim must be "based upon the same legal theory," *Leist v. Tamco Enterprises, Inc.*, 34 Fed.R.Serv.2d 1424, 1427 (S.D.N.Y.1982), as those of other class members and thus demands that all members of the class have similar injury based on the same course of conduct. *See Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y.1981). Since each proposed class member's claims are based on allegations that they all tendered shares of Conoco stock which were accepted by DuPont on August 5, 1981, but for which cash was not paid promptly after termination of the offer or alternatively, as

promptly as practicable in accordance with the prospectus. This common course of conduct satisfies the typicality requirement of Rule 23(a)(3).

Finally, there can be little doubt that plaintiffs will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a)(4). Plaintiffs' counsel has substantial experience in securities' litigation and have diligently prosecuted this action to date. *See, e.g., Ross v. A.H. Robins Co.,* 100 F.R.D. 5, 7 (S.D.N.Y.1982). Moreover, there is no fundamental conflict or inconsistency between the claims of the proposed class members. Each member will have a claim for damages due to the alleged delay in the payment of cash in exchange for the shares tendered. While the proposed class members were paid at various dates, it will be in the interest of the representative plaintiffs to establish the earliest possible date on which DuPont's payment obligation attached since damages will be based on the time value of the payments not made. Every proposed member will have the same interest no matter when they were actually paid.

■ Caleb asserts that the proposed class action is maintainable in accordance with Rule 23(b)(3) which requires this court to find that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The defendants oppose the certification of the proposed class under Rule 23(b)(3) by pointing to individual distinctions among the processes by which some of the Conoco shareholders tendered their shares. To evaluate this assertion that the individual characteristics of this action will overwhelm the common issues, it is necessary to review in greater detail the claims raised in this action.

The DuPont tender offer commenced on July 15, 1981 and required Conoco shareholders wishing to exchange their shares for cash to tender those shares by midnight on August 3, 1981. Tenders were to be made in either of two ways. They could be made by delivery of the stock certificates along with a completed "letter of transmittal," or they could be made by submitting the letter of transmittal alone as a guarantee of delivery and delivering the shares themselves within eight New York Stock Exchange trading days. A letter of transmittal was also to be submitted when the shares were delivered pursuant to a prior guarantee of delivery, and the transmittal provided boxes to be checked so that the stock certificates could be correlated with the guarantee letter submitted at the earlier date.

Once having tendered, a tenderor could withdraw his shares or elect a different consideration in exchange for his shares. Thus, at any time before the deadline for cash tenders, a Conoco shareholder could submit in writing a request to switch a tender in exchange for DuPont stock to one in exchange for cash. At any time before midnight August 4, a shareholder could withdraw all or any portion of his shares previously tendered or could switch an election for cash to one for DuPont stock instead. The tenders were processed in accordance with the type of election that was indicated on the letter of transmittal, and the defendants assert that about 75% of the total cash payments were sent out within five business days after DuPont's acceptance on August 5, 1981.

The defendants claim that a class action would be inappropriate because the timing of DuPont's payment of cash depended on a variety of individual facts and circumstances. The defendants have noted a number of examples of tenders which were allegedly delayed by reason of the unusual circumstances attending a particular tender. Some of the letters of transmittal were allegedly executed incorrectly and failed to specify either that the shareholder

elected cash or that stock certificates were being delivered pursuant to a prior election for cash. In other tenders, some shareholders later notified the exchange agent that they were changing their election or were withdrawing a portion of their shares. Thus, the defendants claim that a determination of whether a tenderor was paid promptly depends on an evaluation of the letter of transmittal executed by each tendering shareholder as well as any subsequent communication between the shareholder and the exchange agent. At this point, however, DuPont and First Jersey have identified only nine tendering shareholders out of about 4,000 proposed class members whose tenders allegedly required individualized attention.

Each side has set forth opposing lines of cases as authority in favor and in opposition to the use of a class action in this case. Caleb emphasizes that this action raises securities law claims which are especially conducive to class action treatment. *See, e.g., Green v. Wolf, supra,* 406 F.2d at 295; *Akerman v. Oryx Communications, Inc.,* 609 F.Supp. 363 (S.D.N.Y.1984); *Lowenschuss v. Bluhdorn,* 72 F.R.D. 498 (S.D.N.Y.1976). In these cases, the common issue of whether the terms of the prospectus were violated or were misrepresented overshadowed individual issues regarding proof of reliance, causation or affirmative defenses.

On the other hand, DuPont and First Jersey argue that, where the interrelationship between a defendant and its shareholders is more complex than the mere issuance of a prospectus, class certification should be denied due to the need to examine individually the relationship between a defendant and the injured parties. However, the cases relied upon to establish this principle are distinguishable from the present case.

*Moscarelli v. Stamm,* 288 F.Supp. 453 (E.D.N.Y.1968), for example, involved claims of churning, margin requirement violations and breach of oral agreements. In denying class certification, the court noted that the churning claim by its nature required an examination of the "individual and personal" aspects of the "nature of the account, the transactions in the account and the understanding between the parties." *Id.* at 462. Moreover, the breach of contract claims involved oral agreements which the court recognized are "individualized and susceptible of material variations...." *Id.* In the case of *Ingenito v. Bermec Corp.,* 376 F.Supp. 1154 (S.D.N.Y. 1974), the plaintiffs sought class certification in a securities action which alleged misrepresentations and omissions of material fact in connection with the sale of securities. As in *Moscarelli,* the misrepresentations in *Ingenito* were based on the defendant's salesmen's oral presentations to the purchasers. Since each individual salesman's pitch varied in several material respects, the materiality of the alleged misrepresentations could not be determined on a common classwide basis.

The other cases cited by the defendants involve claims which necessarily depended on a detailed examination of a variety of circumstances to determine whether the claim was applicable to a particular class member. Thus, in *Abrams v. Interco, Inc.,* 719 F.2d 23, 29 (2d Cir.1983), class certification was denied because the plaintiff's claims of conspiracy, coercion and bribery would require examining the particular relationships between the defendant and thousands of proposed class members. In *Wilensky v. Olympic Airways, S.A.,* 73 F.R.D. 473 (E.D.Pa.1977), the determination of whether the defendant breached its obligation "to use its best efforts to carry" the proposed class members would have depended on an individual inquiry regarding the treatment of each passenger on a wide variety of different flights and under different circumstances. *See also Stertz v. Gulf Oil Corp.,* 99 F.R.D. 74 (E.D.N.Y. 1983) (complex calculation of each class member's ceiling price involved a "morass of individual determinations"); *Metalf v. Edelman,* 64 F.R.D. 407 (N.D.Ill.1974) (determination of whether proposed class members were "denied a livelihood consist-

ent with health and well-being" required individualized determination).

While defendants have articulated a number of individually distinct circumstances which affected some of tenders received by the exchange agent, this showing fails to overcome the predominance of common issues in a case such as this where "contact with a prospectus or some other discrete source of information is the only (or at least primary) contact the investor has with the defendant." *Ingenito, supra,* 376 F.Supp. at 1167. The factual circumstances of this case involve a contractual obligation pursuant to a written prospectus which set forth a prescribed method of tendering shares in exchange for payment. The exchange itself was handled through a standardized letter of transmittal and centralized exchange agent. The fact that the defendants may be able to assert affirmative defenses against some shareholders who allegedly tendered improperly should not defeat this motion for certification. *See Arthur Young & Co. v. United States District Court,* 549 F.2d 686 (9th Cir.1977) (alleged non-reliance by certain class members insufficient to avoid class certification); *Milberg v. Lawrence Cedarhurst Federal Savings & Loan Assoc.,* 68 F.R.D. 49 (E.D.N.Y.1975) (defense of laches against some members of the proposed class will not require denial of class certification).

■ The common issues regarding DuPont's obligation to pay promptly after termination of the offer under Rule 14c–1(c); the meaning of DuPont's contractual obligation to pay as promptly as practicable; the trigger date for this contractual obligation, and the determination of whether the date of delivery or presentation of the exchange agent draft should be deemed the date cash was paid, will not depend upon the circumstances of each individual tender but rather the circumstances of the entire tender offer, the prevailing business practices and the terms of the prospectus. While the difficulties encountered by the exchange agent may be relevant to the determination of the defendants' prompt-

ness, they do not require that the issue of promptness be determined individually as to each tenderor. Under these circumstances a class action will be superior to "a series of individual suits since it allows for a more economical adjudication of the issues in terms of time, energy and expense than separate suits would permit." *Kaufman v. Lawrence,* 76 F.R.D. 397, 399 (S.D. N.Y.1977). *See also Somerville v. Major Exploration, Inc., supra,* 102 F.R.D. at 505.

■ As noted above, the defendants have thus far identified only nine tenderors as to which they claim individual mitigating circumstances. Moreover, those nine tenderors may be categorized as falling into a few variations on the common tender: (1) those that tendered guarantees of delivery and later delivered stock certificates either (i) with or (ii) without checking the appropriate box on the letter of transmittal, (b) those that failed to elect cash or elected DuPont shares in their initial tender and subsequently notified First Jersey of their election for cash prior to the August 3, 1981 deadline, and (c) those that partially withdrew their tenders. With this limited number of individual defenses, it appears that they may manageably be tried at the same time as the common issues. A single trial could still be accomplished even if more tenderors subject to these defenses are identified since they may well lie within a manageable handful of representative categories. Even if every individual's claim cannot be fully adjudicated at a single trial, the predominance of common issues justifies the maintenance of this class action and consideration of the individual issues can later be decided through a separate trial or through the use of a special master. *See Brennan v. Midwestern United Life Insurance Co.,* 286 F.Supp. 702 (N.D.Ind.1968), *aff'd,* 417 F.2d 147 (7th Cir.1969). *See generally,* 3B J. Moore & J. Kennedy, *Moore's Federal Practice* ¶ 23.-45[2] (1985); 7A A.C. Wright & A. Miller, *Federal Practice & Procedure* § 1778 (1972). Modification of the class action is, of course, available to accommodate later

developments. Fed.R.Civ.P. 23(c)(1), (4). *See Green v. Wolf Corp., supra,* 406 F.2d at 298.

■ Finally, the class proposed to be certified by the plaintiffs is not an impermissibly vague "fail safe" class, *see Lewis v. Capital Mortgage Investments,* 78 F.R.D. 295, 310 (D.Md.1978), merely because it is defined by the terms "promptly" or "as promptly as practicable" rather than a specific time period such as five business days. The plaintiffs seek to prove that these terms are indicative of specific time periods applicable to all shares tendered and therefore assert that the members of the class will be unambiguously determined after the trier of fact resolves this issue. Given the inability to determine this issue more precisely in advance of seeking class certification, the definition of the proposed class is adequate at this time. *See Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 572 (2d Cir.1982) (inappropriate "to resolve substantial questions of fact going to the merits when deciding the scope or time limits of the class"); *Irving Trust Co. v. Nationwide Leisure Corp.,* 95 F.R.D. 51 (S.D.N.Y. 1982).

**Conclusion**

For the foregoing reasons Caleb's motion for class certification will be granted. The parties are directed to submit a proposed order which shall declare a class action as directed herein and shall provide for a form and method of notice and for mailing, publication and a procedure for opting out in accordance with Fed.R.Civ.P. 23(c)(2). The proposed order is to be submitted on notice or consent by May 21, 1986.

**IT IS SO ORDERED.**