Jennifer **GERMAN** and Wellington German, Infants by their Mother and Natural Guardian Ana Maritza German, and Ana Maritza German, Individually, Plaintiffs,

and Marcus Coran and Raniqua Smith, Infants by their Mother and Next Friend Denise Goffin, and Denise Goffin, Individually, and on behalf of all persons similarly situated, and Hector Luis David and Marilyn Bernardez, Infants by their Mother and Natural Guardian Florentina David, and Florentina David, Individually, and on behalf of all persons similarly situated, and Sharia Franklin and Cynthia Franklin, Infants by their Mother and Next Friend, Carol Franklin, and Carol Franklin, Individually, and on behalf of all persons similarly situated, Intervening Plaintiffs,

v.

**FEDERAL HOME LOAN MORTGAGE CORP.,** Property Services Company, Caisi Management Company, Inc., 1710 Montgomery Realty Assoc., L.P., Jerome Deutsch, City of New York and Harold Beck d/b/a Tebec Management Co. and New York City Housing Authority, Defendants.

No. 93 Civ. 6941 (RWS).

United States District Court, S.D. New York.

June 25, 1996.

Fitzgerald & Fitzgerald, P.C., Yonkers, N.Y. (John M. Daly, Brian J. Farrell, John E. Fitzgerald, of counsel), and Bronx Legal Services by Lucy Billings, New York City, for Plaintiffs.

Landman Corsi Ballaine & Ford P.C., New York City (William G. Ballaine, John C. Morland, Lance Wolf, of counsel), for Defendants Federal Home Loan Mortgage Corporation and Caisi Management Company, Inc.

Weinstein, Chayt & Chase, P.C., Brooklyn, N.Y. (Irwin J. Weinstein, of counsel), for Defendants 1710 Montgomery Realty Assoc. Jerome Deutsch, Todd Wittenstein, Alex Wagman and Property Services Company.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City (Paul J. Bottari, Nina Cangiano, Joseph F. Muratore, of counsel), for Defendant New York City Housing Authority.

Paul A. Crotty, Corporation Counsel of the City of New York, New York City (Gabriel Taussig, Lisa S.J. Yee, of counsel), for Defendant City of New York.

## OPINION

SWEET, District Judge.

Plaintiffs, a class of residents of New York City housing, have moved pursuant to Rule 23(a)(4), Fed.R.Civ.P., to add the David and Franklin family plaintiffs as class representatives, and to amend the class definition to include residents of housing owned by Defendant the City of New York ("the City") and residents who are pregnant women. Plaintiffs also moved pursuant to Rule 23(d), Fed.R.Civ.P., for an order requiring notice to be distributed to the defined class and paid for by Defendants, and requiring Defendants to produce a list of residents in housing owned by the City or Defendant the Federal Home Mortgage Corporation ("Freddie Mac"), or where Defendants administer federal funds. For the reasons set forth below, the motion to add class representatives is granted, the motion to amend the class definition is granted in part and denied in part, and the motion to order notice to the class is denied with leave to renew.

### Prior Proceedings

The parties, facts and prior proceeding are fully described in earlier opinions of this Court, familiarity with which is assumed. *See German v. Federal Home Loan Mortg. Corp.*, 1994 WL 319154 (S.D.N.Y. June 28, 1994) (*German I*); *German v. Federal Home Loan Mortgage Corp.*, 885 F.Supp. 537 (S.D.N.Y.1995) (*German II*); *German v. Federal Home Loan Mortgage Corp.*, 896 F.Supp. 1385 (S.D.N.Y.1995) (*German III*); *German v. Federal Home Loan Mortgage Corp.*, 899 F.Supp. 1155 (S.D.N.Y.1995) (*German IV*). A review of those facts and prior proceedings relevant to this motion is presented below.

Pursuant to a Summons with Notice and Verified Complaint dated July 26, 1993, Ana Maritza German instituted an action in Supreme Court, Bronx County, against PSC, CAISI, 1710, Freddie Mac, Deutsch, Wittenstein, and Wagman. The Complaint sought damages for personal injuries to the infant Germans and sought relief for Ana German in her individual capacity as mother and natural guardian of the infant plaintiffs.

Pursuant to 28 U.S.C. § 1446(b), Defendant Freddie Mac, as an entity created by federal legislation, removed this action to this Court on October 5, 1993.

On June 28, 1994, the Court granted Plaintiffs' motion to amend their complaint to include additional defendants and to supplement their claims. *See German v. Federal Home Mortgage Corporation,* 1994 WL 319154 (S.D.N.Y.1994).

On August 22, 1994, the Goffin family, a mother and her two children residing in a building owned by Freddie Mac, filed an intervening complaint in this action which sought individual and class relief.

A Second Amended Complaint (the "Complaint") was filed on September 14, 1994, in which the Plaintiffs sought class certification and an order requiring Defendants to take steps necessary to protect from lead poisoning young children living in their buildings or units to which Defendants administered federal funds.

On September 29, 1994, the Germans and the Goffins filed a motion seeking class certification. Motions to dismiss and for partial summary judgment were also filed by all the Defendants in September.

On May 8, 1995, an opinion was filed which granted in a modified form Plaintiffs' motion to certify a class, and granted Defendants' motions to dismiss state claims based on theories of negligence *per se,* strict product liability, and liability for ultrahazardous substances. Defendants' motions to dismiss the other state causes of action were denied.

The Plaintiffs requested certification for the following class and subclasses:

*Class Warning and Notice*

All persons residing on premises either owned, managed, or operated by any of the defendants or where they administer assistance payments under a federal housing program.

*Sub–Class # 1: Medical Monitoring*

All persons age 8 years and under and all women of child-bearing age (12–50 years old) residing in buildings owned, managed, or operated by defendants or where they administer assistance payments under a federal housing program.

*Sub–Class # 2: Abatement*

All persons age 8 years and under and all women of child-bearing age (12–50 years old) residing in buildings owned, managed, or operated by defendants or where they administer assistance payments under a federal housing program, and where there is lead-based paint in or on the dwelling or common area.

By opinion dated May 8, 1995, the Court granted the class certification motion in a somewhat modified form. Specifically, the Court held that:

The classes certified will include "children under seven years old residing in buildings owned, managed, or operated by defendants or where they administer assistance payments under a federal housing program." While the Court agrees that as a practical matter, notice of the risks and signs of lead paint problems will need to be sent to all tenants to insure that those at risk of injury are notified, the class can only contain those at risk. The sub-class for Medical Monitoring will include the modification that there must be the risk of lead-based paint, consistent with the statutes, including the statutory presumptions. The remainder of the class definitions requested by plaintiffs will remain as requested by plaintiffs and as described herein.

*German II,* at 561.

In the final analysis, the class was certified as against the City as a PHA under the claims brought by the German Plaintiffs, and as against Freddie Mac as an owner and NYCHA as the PHA under the claims brought by the Goffin plaintiffs.

On June 1, 1995, the David family filed a motion to intervene, and on June 19, 1995, the David family filed an Intervenor Complaint. On August 22, 1995, the David family's motion to intervene was granted, and motions by the City and Freddie Mac to reargue the class certification motion were denied. *German III,* 896 F.Supp. at 1391–92. The David family's second intervenor Complaint was filed February 8, 1996.

On June 27, 1995, the Franklin family filed a motion to intervene and an intervenor Complaint. On September 15, 1995, the Franklin family's motion to intervene was granted. *German IV,* 899 F.Supp. at 1166–67. The Franklin family filed a second intervenor Complaint on February 8, 1996.

On November 28, 1995, Plaintiffs filed a motion pursuant to Rule 23(a)(4), Fed.R.Civ.P., to add the David and Franklin family plaintiffs as class representatives, to amend the class definition to include residents of housing owned by Defendant the City, and residents who are pregnant women. Plaintiffs also moved pursuant to Rule 23(d), Fed.R.Civ.P., for an order requiring notice to be distributed to the defined class and paid for by Defendants, and requiring Defendants to produce a list of residents in housing owned by the City or Defendant Freddie Mac, or where Defendants administer federal funds. Oral argument on Plaintiffs' motion was heard on March 22, 1995 at which time the motion was considered fully submitted.

### The Proposed New Class Representatives

#### The Franklins

Intervening Plaintiff Cynthia Franklin ("Cynthia") was born on December 12, 1991, and has resided at 117 North Burgher Avenue, Staten Island, New York (the "North Burgher Avenue Building") since June 1992. She was diagnosed with an elevated blood lead level of 16 ug./dl on December 12, 1992. On March 24, 1994, her blood lead level was 35 ug./dl.

Intervening Plaintiff Sharia Franklin ("Sharia") was born on May 14, 1989, and has resided at the North Burgher Avenue build-

ing since June 1992. Sharia was diagnosed with an elevated blood lead levels of 18 ug/dl on September 22, 1992 and of 35 ug/dl on April 5, 1994.

Intervening Plaintiff Carol Franklin is the mother and natural guardian of plaintiffs Cynthia and Sharia. She has lived at the North Burgher Avenue building since June 1992 and brings this suit on behalf of herself and her above named children. Carol Franklin lives at Norther Burgher Avenue with her husband and six children, including the two intervening child-plaintiffs on whose behalf she brings this suit.

According to the Franklin Intervening Complaint (the "Franklin Complaint"), the North Burgher Avenue building is owned and operated by Freddie Mac. Freddie Mac has held the deed since February 15, 1995. According to the Franklin Complaint, Freddie Mac receives Federal Section 8 funds for the Franklins' dwelling. CAISI is the managing agent for Freddie Mac at this building. NYCHA administers the Section 8 funds to the property.

When the Franklins moved to North Burgher Avenue in June 1992, the building was owned by the Nesbitts. The Franklins and the Nesbitts entered into a Section 8, "Landlord–Tenant Lease Agreement," on June 18, 1992. That lease was to be effective from July 1, 1992 until February 28, 1995. The lease contained a "Subordination to Mortgages" clause:

> This lease shall be subject and subordinate at all times to the lien of existing mortgages and of mortgages which hereafter may be made a lien on the premises ...

Landlord–Tenant Lease Agreement, ¶ 24.

The lease also contained a "Successors" clause:

> This lease shall be binding upon the Landlord and upon his successors, heirs, executors and administrators.

The Franklins' rent was paid directly to the Nesbitts, in part by NYCHA, pursuant to a Housing Assistants Payment[1] ("HAP") Contract with the Nesbitts, and in part by

---

1. Under Section 8, private landlords enter into HAP contracts with the Public Housing Authority ("PHA") to receive funds on behalf of their tenants to subsidize the tenants' rent payments. 42 U.S.C. §§ 1437f(a)–(e).

the State Department of Social Services ("DSS"). The Franklins paid no money to the landlord themselves.

On March 17, 1993, the First Federal Savings and Loan Association of Rochester ("Foreclosure Plaintiffs"), initiated proceedings to foreclose on the mortgage held by the Nesbitts for the North Burgher Street property. The Verified Complaint listed the Nesbitts and 12 John Does as defendants. Carol Franklin, sued as John Doe # 3, was served with the Complaint on April 1, 1993. Leo Franklin, sued as John Doe # 4, was served with the Complaint on the same day.

Foreclosure Plaintiffs were granted summary judgment on March 14, 1994. The Franklins did not enter an appearance in the foreclosure proceeding. Carol Franklin asserts that she went to the courthouse on the day of the hearing, but was told that the proceeding was between the bank and the Nesbitts and she need not be concerned. On July 14, 1994, the Honorable John Leone of the New York Supreme Court, County of Richmond, entered a judgment of foreclosure and sale. The judgment named Carol and Leo Franklin, among other defendants. Judge Leone ordered that the property be sold at a public auction. The Court further stated that "the defendants in this action, and all persons claiming under them subsequent to the filing of the notice of the pendency of this action, be and they are forever barred and foreclosed of all rights, title, claim, lien and equity of redemption in the said mortgaged premises and in each and every part and parcel thereof."

The City of New York Department of Health ("DOH") has inspected the Franklins' apartment several times and found lead based paint. At its inspection on June 14, 1994, DOH found 45 positive lead paint samples and ordered the owners to abate the lead paint.

In August 1994, by order to show cause, the Franklins moved in state court for, among other relief, an injunction requiring NYCHA to "provide suitable alternate housing of the same size and in a comparable neighborhood but which has been tested for lead paint contamination and proven not to contain lead paint[.]"

By opinion dated November 3, 1994, the Honorable Louis Sangiorgio of the New York Supreme Court of the County of Richmond denied the request for this injunctive relief, holding that there is no provision in the statute or regulation promulgated thereunder requiring NYCHA to provide alternate housing for Section 8 recipients.

According to the Referee's Report of Sale, the property was sold on January 26, 1995 and subsequent to the sale the Foreclosure Plaintiff assigned its bid to Freddie Mac. CAISI, the managing agent for Freddie Mac at the North Burgher Avenue property, gave the Franklins a letter dated February 1, 1995 addressed to "Dear Tenant," which stated, in relevant part:

Freddie Mac now owns your property as a result of a recent foreclosure sale. As a representative for Freddie Mac on this property, CAISI Management Co., Inc. wants to inform you of some of your rights and options. Freddie Mac is committed to provide you with clean, decent housing and, as their representative, we will do all that we can to see that your needs as a tenant are met....

2. **YOU MAY HAVE THE OPTION TO REMAIN IN THE PROPERTY AS A TENANT.** You will, of course, be required to:

\* Pay rent and sign a written tenancy agreement. The rent you will be asked to pay will be set pursuant to the procedures of the Rent Equity Board. The lease agreement you will be asked to sign is a standard form lease which will describe the terms of your occupancy ...

This letter is intended for tenants of this building only. The former owner is expected to vacate the premises immediately.

The deed for the property was transferred to Freddie Mac on February 15, 1995.

Carol Franklin asserts that she notified NYCHA and the DSS worker that the owners of her building had changed. She represents that she and her family have been looking for a new apartment for quite some time and that they have had extensive con-

tact, approximately twice weekly, with a CAISI employee named "Vianie," who is trying to help them relocate.

The Franklins' motion to intervene was served on June 27, 1995. Freddie Mac served a notice to quit on the Franklins on July 24, 1995. The notice was dated July 12, 1995.

According to Freddie Mac, it never signed a new lease with the Franklins, never received Section 8 payments for the North Burgher Avenue property, and never entered into a HAP contract with NYCHA for the property.

### The Davids

Intervening Plaintiff Hector Luis David ("Hector Luis") was born on August 17, 1989, and has resided at 1670 Boston Road, Apartment 21-C, Bronx, New York (the "Boston Road Building") since birth. He was diagnosed as lead poisoned on November 9, 1992.

Intervening Plaintiff Marilyn Bernardez ("Marilyn") was born on October 20, 1980, and has resided at the Boston Road Building since January 16, 1984. Marilyn was diagnosed in 1984 and in March of 1995 as lead poisoned, and gave birth to a baby girl on July 17, 1995. Intervening plaintiff Florentina David is the mother and natural guardian of Plaintiffs Hector Luis and Marilyn. She has lived at the Boston Road building since January 1984 and brings this suit on behalf of herself, her children and Marilyn's fetus.

According to the David Intervening Complaint ("the David Complaint"), the Boston Road building is owned and operated by the City of New York. The City receives and uses Federal Community Development Block Grant Funds for this property.

### I. The Motion To Add Class Representatives Will Be Granted

#### A. The Intervenors Have Standing, and their Claims are Not Moot

As Defendants argue that the David and Franklin families lack standing to sue on behalf of the class, and that their claims are moot, the Court will address the threshold issues of standing and mootness before applying the Rule 23(a)(4) standard for class representatives. See *German II*, 885 F.Supp. at 548.

#### (1) The David Family

■ The City of New York contends that because Marilyn Bernardez gave birth to her daughter on July 17, 1995—prior to the filing of her intervenor Complaint in February 1996—she lacks standing to obtain injunctive relief on the basis of her pregnancy, and that her claims in that regard are moot. The Second Circuit, however, has held that an intervenor-plaintiff's standing is determined as of the time the motion to intervene was filed, not as of the time the Intervenor Complaint was filed. See *Comer v. Cisneros*, 37 F.3d 775, 801 (2d Cir.1994). Marilyn was still pregnant on June 1, 1995, when the motion to intervene was filed on her behalf; accordingly she has standing to obtain injunctive relief on the basis of her pregnancy.

■ Neither are Marilyn's claims rendered moot as a result of her having given birth to her daughter in July 1995, prior to the certification of the proposed subclass she represents. This Court held in *German II*, 885 F.Supp. at 551, that because the named Plaintiff's claims—arising from the inherently transitory public housing market—were claims "capable of repetition, yet evading review," the fact that the named Plaintiff's individual claims might become moot prior to class certification does not render the claims of the entire class moot. Rather, in such circumstances, the ripeness of the class claims "relate[s] back to the original filing." *Id.* citing *Cisneros*, 37 F.3d at 800. *See also German III*, at 1395 (denying Freddie Mac's motion to reargue and explaining appropriateness of relating back to the time of original filing in class actions involving the "transitory exception").

The "transitory" exception applies with even greater force here to Marilyn's claims for injunctive on behalf of pregnant women. Indeed, claims arising out of pregnancy are the quintessential example of those "capable of repetition, yet evading review." *See German II*, 885 F.Supp. at 550, (*citing Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973)) (pregnant woman's challenge to anti-abortion statute not moot when

pregnancy terminated). Accordingly, the ripeness of Marilyn's claims is to be determined with respect to the time of "the original filing."

■ The City of New York argues that even granting the applicability of the "transitory" exception to the mootness doctrine, Marilyn's claims are moot because she was no longer pregnant at the time David's Intervenor Complaint was filed in February 1996. As discussed above, the Second Circuit held in *Cisneros* that the "filing" to which an intervenor-plaintiff's standing relates back is not the Complaint, but the motion to intervene. This holding is based on the simple reality that an intervenor-plaintiff first formally asserts her rights in an action when she files a motion to intervene, not later when she files an intervenor complaint. Given the Second Circuit's recognition of this reality, it would be anomalous, not to mention unjust, to hold that, while standing is determined with respect to the filing of the motion to intervene, ripeness is determined with respect to the time of filing of the Intervenor Complaint, which date is subject to delays out of the Intervenor–Plaintiff's control, such as the court's scheduling and disposition of the motion. Accordingly, Marilyn David's claims are not moot.

#### (2) *The Franklin Family*

■ Defendants Freddie Mac, CAISI Management Company and Harold Beck contend that the Franklin Plaintiffs' claim for equitable relief against Freddie Mac is now moot, as Freddie Mac no longer owns the building in which the Franklins reside. For reasons similar to those set forth above with respect to the David Plaintiffs, although the Franklins' individual equitable claims against Freddie Mac may now be moot, the Franklins may nonetheless act as class representatives so long as their claims were not moot at the time their motion to intervene was filed. *See Cisneros*, 37 F.3d at 800; *German II*, 885 F.Supp. at 549–51. The Franklins filed their motion to intervene on June 27, 1995, at which time Freddie Mac was the owner of the building in which the Franklins reside. Accordingly, the Franklins are not disqualified by reason of the

mootness of their individual claims for equitable relief from representing plaintiff class members. *See German II*, 885 F.Supp. at 551 (holding Goffins' claim against Freddie Mac for injunctive relief on behalf of class not rendered moot by Freddie Mac's subsequent sale of building).

In sum, neither the Davids' nor the Franklins' claims are barred by reason of lack of standing or for mootness.

#### B. *Legal Standard for Class Representation*

■ Rule 23(a)(4) requires that the Plaintiffs, in order to serve as class representatives, be adequately representative of the class. Plaintiffs must satisfy both prongs of a two-pronged test to qualify as adequate representatives: (1) the named plaintiffs' interests must not conflict with the class members' interests, and (2) the named plaintiffs and their attorney must be able to prosecute the action vigorously. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157 & n. 13, 102 S.Ct. 2364, 2370 & n. 13, 72 L.Ed.2d 740 (1982); *Dean v. Coughlin*, 107 F.R.D. 331, 334 (S.D.N.Y.1985).

The Plaintiffs thus must show, first, that there is an absence of conflict and antagonistic interests between them and the class members, and second, that the Plaintiffs' counsel is "qualified, experienced and capable." *Ross v. A.H. Robins Co.*, 100 F.R.D. 5, 7 (S.D.N.Y.1982); *accord In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992).

#### (1) *The David Family*

In *German III*, the Court found the David Plaintiffs "are appropriate class members," as they "will provide the Court with additional material to review," and their "[v]arying facts and circumstances may actually add to the Court's understanding of the scope and breadth of the claims" made by the class and "may well assist the litigation" on behalf of the class, particularly in light of the relatively fluid class involved in this litigation. *Id.* at 1392.

Because Plaintiffs had not previously moved pursuant to Fed.R.Civ.P. 23, the

Court did not qualify the Davids as class representatives. Plaintiffs now make that motion. The Davids are not only appropriate class members, but appropriate class representatives as well.

### (a) *Absence of Conflict*

As set forth above, in order to qualify as a class representative, a plaintiff must show that her interests do not conflict with those of the class members.

Because the Davids share common claims with the previous named plaintiffs, *German III*, 896 F.Supp. at 1392, there is "no fundamental conflict between the claims" of the Davids and the claims of the class members. *German II*, 885 F.Supp. at 555 (citing *Caleb v. DuPont De Nemours*, 110 F.R.D. 316, 319 (S.D.N.Y.1986)). Likewise, the Davids cannot "be motivated by anything other than the causes of action." *German II*, 885 F.Supp. at 555. *Accord McNeill v. NYCHA*, 719 F.Supp. 233, 253 (S.D.N.Y.1989).

Like each of the class members, the Davids have "an interest in seeing that any dangerous lead-paint conditions are fixed in their homes," *German II*, 885 F.Supp. at 555, an interest " 'co-extensive with the interest of the entire class.' " *Stenson v. Blum*, 476 F.Supp. 1331, 1335 (S.D.N.Y.1979) (quoting *Eisen*, 391 F.2d at 562). " '[A]ll seek to enjoin defendants' action[s]' " that have permitted dangerous lead paint conditions to remain in their homes. *German II*, 885 F.Supp. at 555 (quoting *Stenson v. Blum*, 476 F.Supp. at 1335).

With respect to the Davids,

[T]here is little "likelihood that the litigants are involved in a collusive suit or that plaintiff has interests antagonistic to the remainder of the class," ... and the interest of [the] representative party, is "co-extensive with the interest of the entire class," ... because all seek to enjoin defendants' action. *See Bacon v. Toia*, 437 F.Supp. 1371, 1381 (S.D.N.Y.1977), *aff'd*, 580 F.2d 1044 (2d Cir.1978).

*Stenson v. Blum*, 476 F.Supp. at 1335 (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968)).

While Defendants have raised issues with regard to the credibility of Florentina David and Marilyn Bernardez, and the possibility that their interests do not coincide with those of the class, the Court is satisfied that the issues raised are not sufficiently serious or relevant to disqualify the Davids as class representatives. The Court will address those arguments in turn.

■ First, Defendants argue that Marilyn's deposition testimony showed her to be an immature, troubled teenager, incapable of making important decisions and therefore unfit to take on the responsibility of representing a class of pregnant women. Defendants also claim that the trauma of Marilyn's rape and abuse raise unique defenses that render her an atypical and inadequate representative of the class of pregnant women. Defendants have failed, however, to indicate the relevance of the supposed "unique defenses" to which Marilyn's history of abuse give rise. No authority has been cited for the proposition that the trauma of rape is so "unique" as to disqualify Marilyn as a typical class representative. Particularly here, however, as Plaintiffs seek only injunctive relief, alternative causes of health or behavior problems serve no evidentiary function here. Similarly, Marilyn's maturity level and behavior are not matters pertinent to her ability to represent the class of pregnant women living in Defendants' housing.

■ To defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems "could become the focus of cross-examination and unique defenses at trial, to the detriment of the class." *Darvin v. International Harvester*, 610 F.Supp. 255, 257 (S.D.N.Y.1985). Plaintiffs' testimony or credibility that is subject to attack must be "on an issue critical to one of their ... causes of action." *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir.1983). In sum, any contention that Plaintiffs cannot be adequate representatives of all class members "requires a finding that some *relevant* criterion separates the party from the group." *Ste. Marie v. Eastern R.R. Ass'n*, 72 F.R.D. 443, 449 (S.D.N.Y.1976) (emphasis added).

The reason for the relevancy requirement is obvious.

[A] finding of antagonism sufficient to preclude a truly representative action by plaintiff ... in every case the conflict must be "genuine," *Madonick v. Denison Mines Limited,* 63 F.R.D. 657, 658–59 (S.D.N.Y. 1974), and must go to the heart of the controversy. It has often been stated that the "antagonism must be as to the subject matter of the suit." *Redmond v. Commerce Trust Co.,* 144 F.2d 140, 151 (8th Cir.), *cert. denied,* 323 U.S. 776, 65 S.Ct. 187, 89 L.Ed. 620 (1944).

*Gates v. Dalton,* 67 F.R.D. 621, 630 (E.D.N.Y.1975). A "sufficient, genuine conflict is that the relief sought 'is different from what the rest of the proposed class would want.'" *Id.* at 631 (quoting *Madonick v. Denison Mines Limited,* 63 F.R.D. 657, 659 (S.D.N.Y.1974)).

Here, as in *Gates,* 67 F.R.D. at 631, "defendants' suggestions of antagonism, even if accepted at face value, in no way establish that the members ... are antagonistic to continued preservation and protection of their ... rights." Defendants have not tied any Plaintiffs' divergent interest or other inadequacy to the relief sought in this action. Particularly because Plaintiffs in this action seek injunctive relief only, even if Defendants could make that connection, the "evidence of antagonism ... should be nothing short of clear and convincing." *Id.* at 632.

■ Defendants further argue that Ms. David's evasive and inconsistent testimony regarding her income, her older son's criminal history and Marilyn's history of rape and sexual abuse could become the focus of cross-examination and unique defenses at trial, to the detriment of the class. *See Darvin v. Int'l Harvester Co.,* 610 F.Supp. 255, 257 (S.D.N.Y.1985), and that Ms. David's failure to take action earlier to protect her pregnant daughter from the dangers of exposure to lead paint indicates that Ms. David is not qualified to participate actively in this action on behalf of her daughter and other pregnant women. *See Gill v. Monroe Cty. Dep't of Social Services,* 92 F.R.D. 14, 16 (W.D.N.Y. 1981).

According to the leading commentator on class actions, most courts have rejected challenges to adequacy based on allegations that plaintiffs backgrounds were alleged to include "unrelated unsavory, unethical, or even illegal conduct." 1 H. Newberg & A. Conte, *Newberg on Class Actions,* § 3.36 (3d ed. 1992) (hereinafter *"Newberg"*) (collecting cases). As set forth above, a proposed class representative's interest may only be said to be in conflict with those of other class members where the class representative is vulnerable to unique defenses and sharp attacks *relevant to the issues in the litigation.* In light of the case law cited above requiring that attacks to a class representative's adequacy be relevant to the Plaintiffs' claims, Ms. David is not rendered particularly vulnerable by virtue of the largely irrelevant attacks launched by Defendants.

The Court finds that the Davids have satisfied the "absence of conflict" prong of the Rule 23(a)(4) test.

### (b) *Qualification of Counsel*

■ The second prong of the Rule 23(a)(4) test is that "the party's attorney be qualified, experienced, and generally able to conduct the proposed litigation." *Eisen* at 563. *See also Nilsson v. Coughlin,* 670 F.Supp. 1186, 1191 (S.D.N.Y.1987). As the Court noted in granting the David family's motion to intervene, "the intervenors are represented by the same counsel as the other named plaintiffs and their participation will facilitate adjudication of the dispute." *German III,* 896 F.Supp. at 1392 (citing *Davis v. Smith,* 431 F.Supp. 1206, 1209 (S.D.N.Y.1977)).

The Court has already found, in *German II,* that the original plaintiffs are represented in this action by two qualified organizations in the New York City area which have handled large numbers of class actions, including many involving lead paint exposure. The Court's finding that Plaintiffs' counsel "has demonstrated that it will prosecute this action vigorously and competently, and it is expected that they will continue to do so," applies to counsel's continued prosecution of the action with additional class representatives. *German II,* 885 F.Supp. at 556. Plaintiffs' counsel are now, no less than in May 1995, "'qualified, experienced and gen-

erally able to conduct the proposed litigation.' " *See Stenson v. Blum*, 476 F.Supp. at 1335 (quoting *Eisen*, 391 F.2d at 562); *see also McNeill v. New York City Housing Auth.*, 719 F.Supp. at 253.

Finally, the Court's further findings that the Davids' "[v]arying facts and circumstances may actually add to the Court's understanding of the scope and breadth of the claims," "will provide the Court with additional material to review as this case progresses," and "may well assist the litigation" further demonstrate that Plaintiffs' counsel continues to conduct this litigation properly in the interests of all class members. *German III*, 896 F.Supp. at 1392. Particularly with multiple defendants and claims against each, all of which each representative plaintiff does not seek to represent, "of course it is preferable ... to have more than one named party represent the interests of the class." *Ste. Marie v. Eastern R.R.*, 72 F.R.D. at 449.

Accordingly, the second prong of the Rule 23(a)(4) test is satisfied with respect to the Davids. As the Davids meet both the first and second prongs of the Rule 23(a)(4) test, Plaintiffs' motion to add the Davids as class representatives will be granted. The Davids live in a building owned by the City, for which the City receives federal CDBG money. The Davids therefore lack standing to serve as class representatives to those class members seeking injunctive relief against Freddie Mac. *See German II*, 885 F.Supp. at 549 (holding that Germans lack standing to sue City, because City sold building in which Germans reside prior to commencement of lawsuit). The Davids will be added as representatives of the subclass of residents of buildings owned by the City, and receiving CDBG funds from the City as PHA, and will accordingly represent those class members seeking injunctive relief against the City as owner and as administrator of CDBG funds.

### (2) *The Franklin Family*

#### (a) *Absence of Conflict*

Having rejected Defendants' contention that the Franklins' claim against Freddie Mac is moot, the question is presented as to whether the Franklins are qualified to serve as representatives of those class members seeking injunctive relief against Freddie Mac. Defendants claim that the Franklins are not adequate class representatives because Freddie Mac no longer owns the building in which the family resides, and that the lead paint violations have already been abated, making it unlikely that the Franklins have a sufficient interest to pursue vigorously injunctive relief on behalf of the class.

Defendants further contend that the Franklins are not appropriate class representatives because they reside in a two-family dwelling, and that the certified class includes only those residents of multi-family dwellings. Freddie Mac claims further that the Franklins are vulnerable to a unique defense—that as Section 8 tenants of a two-family house whose lease was extinguished before Freddie Mac acquired title, the Franklins lack continuing rights to seek injunctive relief against Freddie Mac. Similarly, NYCHA claims that it will assert against the Franklins the "unique defense" that the Franklins inspected their residence and certified that it was free of cracking, peeling or loose paint.

Defendants also contend that Mrs. Franklin was not prepared at deposition to discuss the relief she sought in this case, as distinct from that sought in a separate damages case, and was able to do so only after presumably receiving coaching from her counsel. Finally, Defendants contend that, like the Davids, Mrs. Franklin is not a credible and reliable witness, and is subject to unique defenses relating to her inconsistent testimony regarding her husband's criminal record, her own prior drug use during her pregnancies, and allegations that her son Leo had suffered physical abuse.

As set forth above, the fact that the Franklins may no longer reside in a building owned, managed, or operated by Freddie Mac or have individual equitable claims against Freddie Mac does not moot their action on behalf of the class, even if that fact became true before their certification as class representatives. *Gerstein v. Pugh*, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43

L.Ed.2d 54 (1975). The fact that Freddie Mac sold the Franklins' building prior to the instant motion is similarly not a bar to their addition as class representatives.

■ The Franklins are not disqualified as class representatives because they vigorously pursued and obtained part or even all of their requested relief on the equitable claims on their own behalf. The Franklins can hardly be faulted for having achieved a measure of success in their efforts to abate the existing violations in their home. Indeed, such conduct establishes their keen interest in equitable relief, their shared interests with class members seeking the same relief, their suitability as active, aggressive proponents of such relief, and their ability to safeguard class members' interests.

■ Further, the Franklins' residence in a two-family, rather than a multi-family, dwelling, is likewise not a bar to their qualification as class representatives. Freddie Mac maintains that the class is limited to tenants in multiple dwellings, rather than the true class of residents in dwellings. *German II*, 885 F.Supp. at 560–61. While the Court did state that "[t]he plaintiffs in this action, like every other member of the proposed class, are tenants in multiple dwellings in New York City," *Id.* at 554, the Court did *not*, in so stating, limit the class to tenants of multiple dwellings; instead it merely observed that, at the time—*i.e.*, prior to the Franklin's intervention—the class consisted entirely of residents of multiple dwellings.

Indeed, the Court, in certifying the class, held that "the classes certified will include children under seven years old residing in buildings owned, managed or operated by defendants or where they administer assistance payments under a federal housing program," and did not specify the nature or size of the "buildings" whose residents constitute the plaintiff class. *German II;* 885 F.Supp. at 561. Moreover, the Court subsequently found that the Franklin plaintiffs "are appropriate class members," that they "will provide the Court with additional material to review," and their "[v]arying facts and circumstances may actually add to the Court's understanding of the scope and breadth of the claims" made by the class and "may well

assist the litigation" on behalf of the class. *German IV*, 899 F.Supp. at 1166. The fact that the Franklins represent and exemplify the common facts and circumstances of the specific sector of the class who are not tenants of multiple dwellings, as well as the overall class of residents of Freddie Mac owned buildings, qualifies the Franklins all the more as class representatives. *Id.*

■ With respect to Freddie Mac's "unique" defense that the Franklins' rights have been extinguished, while the foreclosure of the Franklins' dwelling may have extinguished the Franklins' leasehold under state law, this Court expressly found that their tenancy was not extinguished under federal law and that they had rights to remain as tenants in their dwelling. *German IV*, 899 F.Supp. at 1162–64. Even assuming, *arguendo*, that the Franklins are unique in that their lease was extinguished prior to Freddie Mac's acquisition of the building, the possibility that individualized issues will be raised in connection with the Franklins' claims does not disqualify them as class representatives. *See Ste. Marie v. Eastern R.R.*, 72 F.R.D. at 448. *See also id.* at 450; *Hecht v. Cooperative for Am. Relief Everywhere, Inc.*, 351 F.Supp. 305, 312–13 (S.D.N.Y.1972).

■ NYCHA's "unique" defense to the Franklins' claim is that prior to signing the lease for 117 Burgher Street, the Franklins conducted a physical inspection of the apartment wherein they certified that the apartment was free of cracking, peeling and loose paint. Yet the Franklins' visual observation of the apartment is not a reasonable defense to plaintiffs' claims that the lead paint levels in their apartment violate applicable standards. A layman's observation would not detect the excessive levels of lead that applicable law prohibits. N.Y.C.Admin.Code § 27–2013(h); *German v. FHLMC*, 885 F.Supp. at 565.

Moreover, the class claims that under applicable law, NYCHA must inspect apartments it permits to be leased using federal assistance, to detect if the paint contains the excessive levels of lead that the applicable law prohibits. As those levels cannot be

determined visually, NYCHA must test them, and tenants have no such obligation.

Even if inspection procedures and results were questions individual to the Franklins, such questions would not thwart the Franklins' representation of the certified class. "It is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." *Gary Plastic Packaging v. Merrill Lynch,* 903 F.2d 176, 180 (2d Cir. 1990).

Finally, other possible contributing causes of the children's impairments, such as drug use during pregnancy, are irrelevant to this action, as set forth with respect to the Davids' qualifications. Neither the class action nor the Franklins' intervening action in this court involves the consequences of lead paint poisoning. Both pertain exclusively to exposure to lead paint and prevention of lead paint poisoning. *German II,* 885 F.Supp. at 558–59; *German IV,* 899 F.Supp. at 1161. Whether currently poisoned or not, Plaintiffs' claim is that all young children require periodic screening for their blood lead levels, notice to their families of the potential dangers of lead paint, and inspection for and abatement of any lead paint in Defendants' dwellings where the children reside. *German II,* 885 F.Supp. at 548–49, 558–59.

■ Similarly, Defendants would relate the conduct of a non-party, Ms. Franklin's husband, to this action. Yet, neither his alleged abuse of another non-party, their son Leo, nor Mr. Franklin's failure to perform the landlord's repair obligations in their apartment, nor Mr. Franklin's income is relevant to this action. As set forth above, "unique defenses" and sharp attacks bear on a class representatives qualifications only where directly relevant, and therefore a potential detriment to, plaintiffs' claims. The inflammatory and "unsavory" aspects of the Franklins' family background are of precisely the sort that courts have generally been unwillingly to invoke as bars to adequacy of class representation. *See Newberg,* § 3.36. Likewise, under the Supreme Court's holding in *Surowitz v. Hilton Hotels, Inc.,* 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), Ms. Franklin's possible confusion about the legal issues involved in this litigation do not bear on her qualifications to serve as a class representative. *See Newberg,* § 3.34.

Accordingly, the first prong of the Rule 23(a)(4) test is met with respect to Ms. Franklin, and she is qualified to represent young children in NYCHA's dwellings, as well as in Freddie Mac's dwellings.

### (b) *Qualification of Counsel*

The Franklins, like the Davids, are represented by counsel for the current plaintiff class representatives. For the reasons set forth above in the discussion of the qualification of counsel for the Davids, the Franklins' counsel is well-qualified to represent the Franklins as class representatives. The Franklins have thus satisfied the second prong of the Rule 23(a)(4) test.

Accordingly, Plaintiffs' motion to add the Franklins as class representatives will be granted. The Franklins live in a building owned by Freddie Mac, for which NYCHA receives federal Section 8 funds. The Franklins therefore lack standing to serve as class representatives to those class members seeking injunctive relief against the City as owner or as administrator. *See German II,* 885 F.Supp. at 549 (holding that Germans lack standing to sue City, because City sold building in which Germans reside prior to commencement of lawsuit). The Franklins will be added as representatives of the subclass of residents of buildings owned by Freddie Mac, and receiving Section 8 funds through NYCHA as PHA, and will accordingly represent those class members seeking injunctive relief against Freddie Mac as owner and NYCHA as administrator of Section 8 funds.

### II. *The Motion to Expand the Class*

Because the Davids had not previously made a motion pursuant to Fed.R.Civ.P. 23, the court did "not consider the potential class defining implications of the Davids' intervention." *German v. FHLMC,* 896 F.Supp. at 1392. Plaintiffs now make that motion as well.

### A. *The Class Will Be Redefined to Include Residents of City Owned Housing*

■ The City is currently a defendant in this action only in its capacity as administra-

tor of federal funds to New York City housing. *See German II*, 885 F.Supp. at 549. Because the City was no longer owner of the Germans' building when the Complaint in this action was filed, the Court previously held that the Germans had no standing to represent a class against the City as owner. *Id.* In finding "no issue of standing with regard to the proposed class representatives" and other defendants, the court relied on the fact that "[e]ach of the plaintiffs resides now ... in a dwelling unit owned or operated by these defendants." *Id.* at 548. The Davids "reside[ ] now ... in a dwelling unit owned or operated by" the City. *Id. See also German III*, 896 F.Supp. at 1390.

The Davids seek the same injunctive relief sought on behalf of the class relating to the dangerous lead paint conditions remaining in their home, and they seek that relief against the City as owner, manager, and operator of their home. Thus they have standing to represent a class against the City as housing owner, manager, and operator. The class certified will therefore be redefined to include children under seven years old residing in buildings owned, managed, or operated by the City.

The City correctly notes that, absent the federal housing assistance, Plaintiffs would not have a federal claim against the City. This basis for the City's opposition does not, however, divest the Court of jurisdiction over the City as owner in this case.

First, the City admits that it uses federal housing assistance in all City-owned housing. *German III*, 896 F.Supp. at 1390, 1393; *German II*, 885 F.Supp. at 544; 548–49. Accordingly, the current definition of the class, which includes residents of buildings where the City administers assistance payments under a federal housing program in New York City, already includes housing owned, managed, or operated by Defendant City. As a factual and practical matter, this redefinition does not in fact expand the class. Moreover, Plaintiffs allege a federal claim against the City in all City-owned housing.

Plaintiffs concede that if the City were to divest itself of a dwelling and not administer federal funds for the benefit of that dwelling, the residents of that dwelling would not be within the class. *German III*, 896 F.Supp. at 1393. Plaintiffs contend that even if the City did not use federal housing assistance, under 28 U.S.C. § 1367, this Court could still exercise supplemental jurisdiction over local law claims against the City. The Court has already found that it would extremely inefficient for the courts to try Plaintiffs' action against less than all the owners of their dwellings in one action and Plaintiffs' action against another owner in another action in another court, when the actions involve the same subject matter, overlapping claims, and the same forms of relief. *German II*, 885 F.Supp. at 562–63. The City contends that allowing the City to be sued in its capacity as owner would cause an overlap with a pending state court action, *N.Y.C. Coalition to End Lead Poisoning (NYCCELP) v. Koch*, 138 Misc.2d 188, 524 N.Y.S.2d 314 (N.Y.Sup.Ct. 1987). As this court has already noted, *see German II*, 885 F.Supp. at 537, the state court action involves claims that the City and its agencies have failed to enforce lead paint laws; it does not include claims against the City as the *owner* of housing, as this action now does. Therefore Defendants' objections on these grounds have no merit. Accordingly, the class will be "expanded" to include children under seven and pregnant women living in City-owned housing.

## B. *The Class Will Be Redefined To Include Pregnant Residents of City Owned Housing*

In addition to the serious risks of lead exposure to children under seven years old, the Court found that Plaintiffs had alleged "the increased risk of miscarriage and birth defects of the children born to pregnant women who ingest lead" and thus "harm or threatened harm to women ... who are pregnant." *German II*, 885 F.Supp. at 561. Injunctive relief is therefore appropriate for the class of pregnant women residing in Defendants' housing or where Defendants' administer assistance payments to a federal housing program in New York City. Because that class of women previously "ha[d] no representative," the Court ruled that this class could not be certified at the time the rest of the class was certified. *Id.*

As set forth above, Marilyn has standing, and is otherwise qualified, to represent the class of pregnant women living in buildings owned, managed, or operated by the City, or where the City administers assistance payments under a federal housing program. The class certified will therefore be expanded to include that subclass of pregnant women residing in buildings owned, managed, or operated by the City, or where the City administers assistance payments under a federal housing program.

Plaintiffs also contend that Marilyn is qualified and has standing to represent the class of pregnant women residing in buildings owned, managed, or operated by Freddie Mac in New York City, or where NYCHA administers assistance payments under a federal housing program. While it is true that the claims of representative and absent class members need not be identical for class representation to be proper, *Avagliano v. Sumitomo Shoji Am., Inc.,* 103 F.R.D. 562, 580 (S.D.N.Y.1984), just as the Germans, the Goffins, and the Franklins may represent only those class members living in housing owned by the same defendant as the representatives' housing, and receiving assistance payments through the same Defendant, Marilyn, who lives in a City owned building and receives assistance payments through the City, is qualified to represent only those pregnant women who also live in City owned housing and/or who receive assistance payments through the City.

Until such time as Plaintiffs come forward with an individual plaintiff qualified to represent pregnant women residing in Freddie Mac housing, or receiving assistance payments through NYCHA, that subclass of women cannot be certified.

### III. *The Motion to Order Defendants to Distribute Notice*

■ Plaintiffs seek an order requiring that notice of the pendency of the lawsuit be given to the Plaintiff class. The relevant rules require notice to a class in only two instances: in (b)(3) class actions, pursuant to Rule 23(c)(2), and in the event of a dismissal or compromise of any class action, pursuant to Rule 23(e). Since the Plaintiff class in this action has been certified pursuant to Rule 23(b)(2), notice to the class of the class certification and the pendency of the lawsuit is not required under the Federal Rules. *Ives v. W.T. Grant Co.,* 522 F.2d 749 (2d Cir. 1975).

The Second Circuit, however, has held that "notice is required as a matter of due process in all representative actions, and 23(c)(2) merely requires a particularized form of notice in 23(b)(3) actions." *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564 (2d Cir.1968) (dictum). Moreover, commentators have noted that generally some form of notice is advisable to insulate the final judgment from collateral attack. 7B C.A. Wright & A.R. Miller, *Federal Practice and Procedure,* §§ 1789, 1793 (Supp.1993). Nevertheless, the plain language of Rule 23(c)(2) limits the notice requirement to (b)(3) class actions, and, notwithstanding the *Eisen* holding, the Second Circuit has not gone beyond that language to require notice in (b)(2) class actions. *See, e.g., Frost v. Weinberger,* 515 F.2d 57, 65 (2d Cir.1975), *cert. denied,* 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976).

Although notice to the Plaintiff class is not required here, the Court may make orders pursuant to Rule 23(d)(2):

> requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action.

The list of situations warranting notice described in Rule 23(d)(2) is not exhaustive, and the Court has broad discretion under this provision. *Supplementary Note of Advisory Committee on 1966 Amendment.* The Advisory Committee indicates, however, that to "the degree that there is cohesiveness or unity in the class and the representation is effective, the need for notice will tend toward a minimum." *Id.*

Plaintiffs contend that immediate notice to the class is required in order to define the scope of the class and to allow members of the class to intervene. The timing of notice provided under (d)(2), however, is not discussed in the text of Rule 23, and the Advisory Committee states that notice may be given "at any stage." *Supplementary Note of Advisory Committee on 1966 Amendment.* According to the *Manual for Complex Litigation,* it is preferable in (b)(3) class actions to deliver notice "promptly after the certification order is issued." *Manual for Complex Litigation,* § 30.211. The timing of the notice is important in the (b)(3) context because of the due process concerns reflected in the (c)(2) opt-out provision. *Newberg,* § 8.09. Since there is no mandatory opt-out alternative in (b)(2) class actions, however, early notice is generally not necessary in such actions. *Id.* at § 8.16.

Notice to the Plaintiffs in this case is not required, and it is not needed at this time to protect their interests, or to otherwise advance the litigation. *See Vulcan Soc. of Westchester County v. Fire Dep't of the City of White Plains,* 82 F.R.D. 379, 402 (S.D.N.Y.1979) (Sweet, J.) (request for notification in (b)(2) class action renewable pending certification "or at some other appropriate time"). While this Court has previously stated that "as a practical matter, notice of the risks and signs of lead paint problems will need to be sent to all tenants to insure that those at risk of injury are notified," *German v. Fed. Home Loan Mortgage Corp.,* 885 F.Supp. 537, 561 (S.D.N.Y.1995) (Sweet, J.), such notice is, as yet, somewhat premature. Although the class has already been certified, the broad parameters of this litigation remain in flux. Nine Defendant lead paint companies have recently been joined as Defendants, and they have filed numerous motions for dismissal and summary judgment which are currently *sub judice.*

Moreover, Plaintiffs have not demonstrated that any prejudice would result from not granting notice at this time. *Cf. Neloms v. Southwestern Elec. Power Co.,* 72 F.R.D. 128, 131 (W.D.La.1976) (citation omitted) (holding notice to be necessary "even in Rule 23(b)(2) class actions if the rights of those absent parties probably would be prejudiced ... by the eventual class judgment").

Since notice is being denied at this time with leave to renew, it is unnecessary to address the content of the Plaintiffs' requested notice or who should bear the costs. It is worth noting, however, that if notice is granted in the future, it will not be in the form currently proposed by the Plaintiffs. The notice described in 23(d)(2) is designed to protect the class members' right to be heard and represented. Through their proposed notice, the Plaintiffs improperly seek to claim an early victory before a trial on the merits. Moreover, notice such as that proposed by the Plaintiffs is inappropriate if it leads to the "undesirable solicitation of claims." *See Hormel v. United States,* 17 F.R.D. 303 (S.D.N.Y.1955). Any notice ordered will be limited to informing class members of the nature of the pending litigation and the binding nature of the judgment.

### Conclusion

Plaintiffs' motion to add the Davids and the Franklins as class representatives is hereby granted. Plaintiffs' motion to expand the class is granted in part and denied in part, as set forth above. Plaintiffs' motion for an order requiring notice is denied with leave to renew.

It is so ordered.